UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

ELLIS DAVON DUDLEY, II,

                                        Plaintiff,

v.                                                              5:24-cv-0222
                                                                (BKS/TWD)


TAMARA BURGOS, et al,

                                        Defendants.

───────────────────────────────────

APPEARANCES:                            OF COUNSEL:

ELLIS DAVON DUDLEY, II
*Plaintiff, pro se*
PO Box 7124
Syracuse, NY 13261

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

The Clerk has sent to the Court for review five submissions filed by *pro se* plaintiff Ellis Davon Dudley, II ("Plaintiff"), as well as a motion to proceed *in forma pauperis* ("IFP").  Dkt. No. 1; Dkt. No. 2.  For the reasons stated below, the Court recommends Plaintiff's pleadings be dismissed.

## II.    IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt. No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore, he is granted permission to proceed IFP.

### III.    PLAINTIFF'S SUBMISSIONS

Plaintiff's first submission is captioned "Ellis Davon Dudley II Plaintiff, V. Tamara Burgos & Department of Social Service Defendant."  Dkt. No. 1.[1]  The document is titled "NOTICE OF REMOVAL" and purports to remove to this Court "all claims and causes of action in the civil action styled IV-D Support Tamara Burgos against Ellis Dudley Jr. File# 58133 Docket#F-02393-21 CSMS# CB66356V1 . . . now active in the Onondaga County Family Court . . . pursuant to 28 U.S.C. §1331, 28 U.S.C. 1441, 42 U.S.C. 660."  Id.[2]  Next, Plaintiff lists fourteen "grounds for removal" which appear to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331.  See id. at 1-2.  The document further states "A copy of all process, pleadings and orders served upon defendants to date in the State Court Attached as Exhibit A are all instruments filed under this situation."  Id. at 2.

The next two submissions appear to contain materials related to two Onondaga County Family Court cases.  See generally, Dkt. Nos. 1-1, 1-2.  The first documents appears to be a petition filed by Plaintiff naming Defendant Burgos as the Respondent, accompanied by a notice of motion, supporting affidavit, order to show cause, and request for immediate temporary relief.  See Dkt. No. 1-1 at 1-5.  The second exhibit contains what appears to be a letter to Plaintiff confirming his employment and pay rate, an income withholding order, two orders of support,

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] The Court takes judicial notice of Plaintiff's other actions currently pending in this District.  Plaintiff filed a complaint in Dudley v. Hochul et al, No. 5:24-CV-0048 (DNH/ML), on January 11, 2024.  Plaintiff also commenced a third action, Dudley v. Montaque, No. 5:24-CV-0222 (BKS/TWD), on February 14, 2024, the same day as the instant matter.  Dudley v. Montaque, was deemed related to the instant matter and directly assigned to the undersigned by text order dated February 29, 2014.  See Dudley v. Montaque, No. 5:24-CV-0222 (BKS/TWD), Dkt. No. 4.

and transcripts of appearances before Onondaga County Family Court.  *See* Dkt. No. 1-1 at 1-56.

Plaintiff also submitted a "CIVIL COVER SHEET."  *See* Dkt. No. 1-3 at 1.  He listed "Tamara Burgos" as the Defendant and identified "Department of Social Services" as Burgos' attorney.  *Id*.  Plaintiff indicated this Court has federal question jurisdiction over the matter.  *Id*.  Concerning the nature of this suit, Plaintiff selected the following options: Negotiable Instrument; Recovery of Overpayment; Other Contract; Contract Product Liability; Personal Injury - Product Liability; Other Fraud; Commerce; and Constitutionality of State Statutes.  *Id*.  Plaintiff did not indicate an origin for this matter, but identified "42 U.S.C. 1981" as the statute under which he filed and listed "Contract Product Liability" as a brief description.  *Id*.  His sole listed demand is for "full Disclosures."  *Id*.  Finally, Plaintiff listed Docket Number "F-06437-22" as a related case before Judge "Patricia DeRue."  *Id*.

Plaintiff's final submission is captioned "CERTIFICATE OF SERVICE BY MAIL."  Dkt. No. 1-4 at 1.  The document indicates Plaintiff served a copy of the "Notice of Removal and Exhibits" on "Tamara Burgos" by depositing a copy of the documents in a mailbox on February 14, 2024.  *Id*.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

3

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)

(citations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Even affording Plaintiff's filings a liberal construction, his submissions are difficult to decipher and fail to provide sufficient factual information for the Court to review or for the Defendant(s) to have notice of any claims against them.  Therefore, the Court recommends this action be dismissed.

As an initial matter, "[a] civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, but Plaintiff has not submitted a complaint in this action.  While a plaintiff's initial filing(s) need not be titled "complaint," *see*, *e.g.*, *Muhammad v. Smith*, No. 3:13-CV-0760 (MAD/DEP), 2013 WL 5652495, at *2 (N.D.N.Y. Oct. 16, 2013) (construing the plaintiff's initial filings as a complaint), *report and recommendation adopted in part, rejected in part*, 2014 WL 3670609 (N.D.N.Y. July 23, 2014), the Plaintiff's submissions here fall short of the Federal Rules' pleading requirements.

Under Rule 8, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (citing *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (emphasis omitted). Plaintiff's submissions lack any such statement.

Significantly, none of Plaintiff's submissions contain any factual allegations against Burgos or the Department of Social Services, despite the fact that both are listed as defendants in the caption. *See generally*, Dkt. Nos. 1, 1-1, 1-2, 1-3, 1-4. Because Plaintiff has failed to enumerate allegations against either defendant, he has failed to state a claim, therefore, dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See generally*, *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual allegations that he has not pled."); *see also*, *e.g.*, *Drawhorne v. Aloise*, No. 6:23-CV-1278 (TJM/TWD), 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (dismissing the plaintiff's claims against an individual where the plaintiff listed the individual "as a defendant in the caption of his complaint but fails to assert any allegations against him or her."), *report and recommendation adopted*, 2024 WL 532572 (N.D.N.Y. Feb. 8, 2024); *Joseph v. Annucci*, 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption

only" where "[t]he body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner.").[3]

In any event, this Court would likely be barred from providing the relief Plaintiff seeks. From what the Court can glean, Plaintiff's contentions in the instant matter relate to Onondaga County Family Court orders requiring Plaintiff to pay child support to Defendant Burgos and another individual. *See generally*, Dkt. No. 1-2 at 4-10.[4]  It appears Plaintiff's aim is to vacate these orders, *see*, *e.g.*, Dkt. No. 1-1 at 3, 5, however, this Court may not adjudicate claims involving such issues.

"First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, No. 1:22-CV-0581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).  "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."

---

[3] Additionally, the Court notes "[u]nder New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit . . . and no claims lie directly against the Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citations omitted).

[4] Plaintiff's submissions indicate on May 11, 2021, Defendant Burgos filed a petition in Onondaga County Family Court alleging Plaintiff is chargeable with the support of a child.  *See* Dkt. No. 1-2 at 4.  On February 23, 2022, Support Magistrate Jeffrey A. Domachowski ordered Plaintiff to provide payment in an amount of $295.00 bi-weekly to Burgos, with such payments to commence on March 4, 2022.  *See id*. at 5-6.  Additionally, on November 14, 2022, Myra Montaque filed a petition in Onondaga County Family Court alleging Plaintiff is chargeable with the support of a second child.  *See id*. at 7.  On April 13, 2023, Support Magistrate Patricia L. DeRue ordered Plaintiff to provide payment in an amount of $146.00 weekly to Montaque, with such payments to commence on May 12, 2023.  *See id*. at 9-10.

*Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See*, *e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, No. 2:19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.'") (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

"Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine." *Walker*, 2022 WL 2341420, at *6. "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citing *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)).  "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court."  *Id.* (citing *Sims v. Kaufman*, No. 1:23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, No. 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases . . . in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016).  Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine.  *See*, *e.g.*, *Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims, while not entirely clear, seem to challenge an order . . . in which the Family Court determined that he owes child support . . . . Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine . . . .") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

Finally, under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside this Court's jurisdiction.  *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also*, *e.g.*, *Oliver v. Punter*, No. 2:22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce, alimony and child custody decrees . . . . This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted).  Accordingly, this Court lacks

jurisdiction to adjudicate a claim involving issues of child custody and support.  *See Rotondo v. New York*, No. 5:17-CV-1065 (GLS/DEP), 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction.  Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017); *Cruz v. New York*, No. 5:17-CV-0510 (BKS/TWD), 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Although this Court has serious doubts, it is not clear whether Plaintiff could assert a cognizable cause of action against either defendant by way of a better pleading.  Therefore, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed with leave to amend.  If Plaintiff chooses to avail himself of an opportunity to amend, any amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted, which Plaintiff has a legal right to pursue, and over which this Court has jurisdiction.  Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[5] and it is

**RECOMMENDED** that Plaintiff's claims be **DISMISSED WITH LEAVE TO**

**AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation

and Order, along with copies of the unpublished decisions cited herein in accordance with the

Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  April 4, 2024
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[5] Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Muhammad v. Smith, Not Reported in F.Supp.2d (2013)

2013 WL 5652495

KeyCite Red Flag - Severe Negative Treatment

Report and Recommendation Adopted in Part, Rejected in Part by
Muhammad v. Smith, N.D.N.Y., July 23, 2014

2013 WL 5652495
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamil Abdul MUHAMMAD, Plaintiff,

v.

Judge Martin E. SMITH, et al., Defendants.

Civil Action No. 3:13–CV–0760 (MAD/DEP).
|
Oct. 16, 2013.

**Attorneys and Law Firms**

Jamil Abdul Muhammad, Brocton, NY, pro se.

[None], for Defendants.

*REPORT, RECOMMENDATION, AND ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff, Jamil Abdul Muhammad, who is
currently a New York State prisoner but was not at the time
this action was commenced, has commenced this civil rights
action, and requested that he be granted leave to proceed *in
forma pauperis* ("IFP").[1] In his complaint, plaintiff asserts
claims against a sitting judge, an assistant district attorney, a
county court and the American Bar Association. In addition
to requesting IFP status, plaintiff has also requested that *pro
bono* counsel assigned to represent him in this matter.

[1]      According to publicly available information,
plaintiff was remanded into the custody of Broome
County on July 2, 2013, four days after this action
was commenced, and was later transferred into
the custody of the New York State Department of
Corrections and Community Supervision on July
25, 2013.

For the reasons set forth below, plaintiff's motion for leave
to proceed IFP is granted, and his application for assignment
of counsel is denied, without prejudice. In addition, based

upon the court's review of plaintiff's complaint pursuant to
28 U.S.C. § 1915(e), I recommend that it be dismissed, with
leave to replead only with respect to defendant American Bar
Association.[2]

[2]      In a filing received by the court after
commencement of the action, plaintiff requested
that the court order his immediate release from
prison. Dkt. Nos. 9, 16. Such relief, however, is
only available from this court by way of writ of
habeas corpus, issued pursuant to 28 U.S.C. § 2254.

**I.** *BACKGROUND*

Plaintiff's complaint, which is largely unintelligible,
lacks crucial information concerning the circumstances
surrounding his present incarceration and those giving rise
to his claims. From other submissions received by the court
from the plaintiff, it appears that he was sentenced by Broome
County Court Judge Martin E. Smith, a named defendant,
based upon a plea of guilty entered in that court. Dkt. No.
7 at 2. Plaintiff appears to allege that, as a result of those
proceedings, Judge Smith is guilty of kidnapping, and liable
for conspiracy to violate his civil rights in violation of 18
U.S.C. § 241.

**II.** *DISCUSSION*

**A.** *Plaintiff's IFP Application*

When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $400, must ordinarily
be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however,
to permit a litigant to proceed IFP if it determines that he
is unable to pay the required filing fee. 28 U.S.C. § 1915(a)
(1).[3] In this instance, because I conclude that plaintiff meets
the requirements for IFP status, his application for leave to
proceed IFP is granted.[4]

[3]      The language of that section is ambiguous, in
that it suggests an intent to limit availability of
IFP status to prison inmates. *See* 28 U.S.C. §
1915(a)(1) (authorizing the commencement of an
action without prepayment of fees "by a person
who submits an affidavit that includes a statement
of all assets such prisoner possesses"). Courts
have construed that section, however, as making
IFP status available to any litigant who can meet
the governing financial criteria. *Hayes v. United*

*States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of New York,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

[4]    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

### B. *Sufficiency of Plaintiff's Complaint*

#### 1. *Legal Standard*

Because I have found that plaintiff Muhammad meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). [5] Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B).

[5]    While plaintiff is subject to the review requirements of 28 U.S .C. § 1915(e), the additional requirements imposed on prisoners pursuant to the Prison Litigation Reform Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996) including, importantly, the requirement to authorize deductions from the plaintiff's prison account to pay the required filing fee in installments, do not apply in this case because plaintiff was not incarcerated at the time he commenced this action. *Christophel v. Brandl,* No. 08–CV–0755, 2008 WL 5429658, at *2 (E.D.Wisc. Dec. 31, 2008).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that

a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC–0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*2** When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (internal quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

### 2. *Analysis*

The claims being raised by plaintiff in this action are difficult to discern. His initial filing, which the court has construed as a complaint, consists of a cover sheet listing the four defendants, a second page setting forth some type of disclaimer, a third entitled "AFIDAVIT [sic] "FOR NEGATIVE AVERMENT [sic]," which contains no facts supporting plaintiff's claims, and a page entitled "AFIDAVIT [sic] FOR 'DECLARATORY JUDGMENT' (RELEASE WITHOUT CONSIDERATION)," purporting to be a document executed under the Uniform Commercial Code, and again failing to set forth facts supporting his claims. Dkt. No. 1 at 1–5. The complaint closes with a handwritten and signed document requesting "the appropriate ruling in this matter," but again fails to set forth facts or identify any causes of action. *Id.* at 6. Attached to plaintiff's complaint are a series of documents, including those purporting to emanate from the United Washitaw de Dugdahmoundyah Mu'ur Nation. Dkt. No. 1–1. Generally, plaintiff's complaint fails to satisfy the minimal pleading requirements of rules 8 of the Federal Rules of Civil Procedure as well as *Twombly* and its progeny. It is unclear from the complaint proffered what causes of action are being stated, and against which defendants. In addition, the complaint lacks any allegations of fact to show that plaintiff can state a plausible claim against one or more of the defendants.

**\*3** In deference to his *pro se* status, the court has scrutinized other filings made in this action by the plaintiff, and analyzed the claims against the named defendants.

### a. *Claims Asserted Against Defendants Smith and White*

Two of the defendants in this case are apparently associated with plaintiff's prosecution in Broome County, including Judge Martin E. Smith, and Assistant District Attorney Jason White. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citing *Mireles v. Waco,* 502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)); *see also Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young,* 41 F.3d at 51. It is equally well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated

with the judicial phase of the criminal process.' " *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)); *see also Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 504 (2d Cir.2004) ("The appropriate inquiry ... is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority."); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (finding that prosecutorial immunity protects prosecutors from liability under section 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

In this case, plaintiff's complaint appears to assert claims against defendants Smith and White in light of their official conduct carried out in their positions as a judge and prosecutor. Accordingly, even assuming that plaintiff's allegations related to these two defendants are sufficiently pleaded, they are entitled to dismissal based on absolute immunity. I therefore recommend that defendants Smith and White be dismissed from the action. [6]

[6] Plaintiff's complaint also accuses defendants Smith and White of violating 18 U.S.C. § 241, a criminal statute that does not give rise to a private right of action. *See Dugar v. Coughlin,* 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985) ("Section[ ] 241 ... relate[s] to deprivation of civil rights, however[,] there is no private right of action under th[is] statute[ ]."); *accord, Licorish–Davis v. Mitchell,* No. 12–CV–0601, 2013 WL 2217491, at *10 (S.D.N.Y. May 20, 2013). That claim, therefore, is also ripe for dismissal at this juncture.

### b. *Claims Asserted Against Broome County Courts*

A third defendant in this case is the Broome County Courts, which is an arm of the State of New York. The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). Because county

Muhammad v. Smith, Not Reported in F.Supp.2d (2013)

2013 WL 5652495

courts are extensions of the states that they serve, they are immune from suit. *Thomas v. Bailey,* No. 10–CV–0051, 2010 WL 662416, at *1 (E.D.N.Y. Feb. 22, 2010); *Molina v. Queens Court,* No. 09–CV–1281, 2009 WL 1181254, at *2 (E.D.N.Y.Ap.30, 2009). I therefore further recommend that plaintiff's claims against the Broome County Courts Sixth District be dismissed.

c. *Claims Asserted Against the American Bar Association*
  **\*4** The last named defendant in plaintiff's complaint is the American Bar Association. It gives no hint, however, as to the basis upon which that association would be liable to plaintiff. Although it is (again) not clear from his complaint, it appears that this action is brought pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (quoting *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). A defendant may not be held liable under section 1983, however, unless it is established that he acted under the color of state law in allegedly violating the plaintiff's constitutional rights. *See, e.g., Faddis–DeCerbo v. Astor Servs. for Children & Families,* 500 F. App'x 46, 47 (2d Cir.2012) ("Plaintiffs bringing suit under 42 U.S.C. § 1983 are therefore required to demonstrate that defendants acted under color of state law when they engaged in the challenged conduct."). Plaintiff's complaint alleges no facts plausibly suggesting that defendant American Bar Association is a state actor, or that it acted under color of state law when allegedly violating plaintiff's rights. For that reason, I recommend that the claims against that defendant be dismissed.

C. *Whether to Permit Amendment*
Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see*

*also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report with respect to the claims asserted against defendants Smith, White, and Broome County Courts are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, I recommend against granting him leave to amend as it relates to those claims. However, although the court is skeptical of any claim that plaintiff may assert against defendant American Bar Association, I recognize that the deficiencies identified in plaintiff's complaint as it relates to those claims could possibly be cured through the inclusion of greater factual detail in his pleading. Accordingly, I recommend that plaintiff be granted leave to amend his claim against defendant American Bar Association only.

D. *Appointment of Counsel*
  **\*5** On August 29, 2013, plaintiff filed a motion with the court seeking appointment of counsel. Dkt. No. 15. District courts are afforded broad, though not limitless, discretion in determining whether to appoint counsel to represent indigent civil litigants. 28 U.S.C. § 1915(e)(1); *see also Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986). In *Hodge,* the Second Circuit noted that, when exercising that discretion, the court should first determine whether the indigent's position seems likely to be of substance. *Hodge,* 802 F.2d at 60. "If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for crossexamination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination." *Hodge,* 802 F.2d at 61–62; *see also Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994).

In this case, as was previously described above, plaintiff's complaint fails to set forth sufficient facts to plausibly allege a cognizable cause of action. Accordingly, it is not clear at this juncture that plaintiff's claims are likely to be of substance.

**Muhammad v. Smith, Not Reported in F.Supp.2d (2013)**

2013 WL 5652495

*Hodge,* 802 F.2d at 60. In addition, as a prerequisite to requesting appointment of *pro bono* counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 173–74 (2d Cir.1989). Given that plaintiff Muhammad has not provided the court with any information regarding his prior efforts to obtain counsel, his request is subject to denial on this basis, as well.

III. *SUMMARY AND RECOMMENDATION*
Plaintiff's filings demonstrate that he qualifies for leave to proceed *in forma pauperis.* Having granted him IFP status, the court has reviewed plaintiff's complaint pursuant to the requirements of 28 U.S.C. § 1915(e), and finds that it does not meet the governing pleading requirements and fails to set forth allegations plausibly suggesting the existence of a cognizable cause of action against defendants. It is therefore hereby

ORDERED that plaintiff Jamil Abdul Muhammad's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is GRANTED; and it is further

ORDERED that plaintiff's motion for appointment of *pro bono* counsel (Dkt. No. 15) is DENIED, without prejudice; and it is further respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED, with prejudice and without leave to replead as against defendants Judge Martin E. Smith, Assistant District Attorney Jason White, and Broome County Courts, and otherwise without prejudice and with leave to replead as to defendant American Bar Association.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5652495

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3670609

2014 WL 3670609
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamil Abdul MUHAMMAD, Plaintiff,

v.

Judge Martin E. SMITH; Jason White, Assistant
District Attorney; Broome County Courts, 6th
District; American Bar Association; United States
of America; and State of New York, Defendants.

No. 3:13–cv–760 (MAD/DEP).
|
Signed July 23, 2014.

**Attorneys and Law Firms**

Jamil Abdul Muhammad, Albion, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 **\*1** Plaintiff, who is currently a New York State prisoner but was not at the time this action was filed, commenced this civil rights action asserting claims against a sitting judge, an assistant district attorney, a county court, and the American Bar Association. See Dkt. No. 1. In an October 16, 2013 Report, Recommendation, and Order, Magistrate Judge Peebles conducted an initial review of the complaint and recommended that the complaint be dismissed, with leave to replead only as to any claims asserted against Defendant American Bar Association. See Dkt. No. 19.

Currently before the Court is Magistrate Judge Peebles' Report, Recommendation, and Order and Plaintiff's objections thereto.

**II. BACKGROUND**

Plaintiff's complaint and his many subsequent filings are largely unintelligible. In his complaint, Plaintiff identifies himself as a "Moor/Sovereign/a Freeman On The Land/ a

Man, Real Live Flesh and Blood [.]" Dkt. No. 1 at 3. Plaintiff claims that, through his "unalienated rights under UCC 1–207(308)," he is "entitled to any Interpleted Funds relative to JAMIL ABDUL MUHAMMAD, and the defendant is determined to be Barred from any collection of my alleged debt from JAMIL ABDUL MUHAMMAD relating to Jamil Abdul Muhammad and defendant had in no 'CLAIM IN FACT.' " Id. at 5.

From other submissions submitted by Plaintiff, it appears that Plaintiff was sentenced by Broome County Court Judge Martin E. Smith, a named Defendant, based upon a plea of guilty entered in that court. See Dkt. No. 7 at 2. Plaintiff appears to allege that, as a result of those proceedings, Judge Smith is guilty of kidnapping, and is liable for conspiracy to violate his civil rights in violation of 18 U.S.C. § 241. See id. Further, Plaintiff makes vague references to a clerk in Binghamton named "Karen," and claims that she and other Defendants have placed him in imminent harm. See Dkt. No. 21 at 4–5. Plaintiff asks the Court to award him "the dismissal of said charges" and to release him "by implying said 'habeas corpus' granting [him] immediate release of confinement[.]" Id. at 5.

In a Report, Recommendation, and Order, Magistrate Judge Peebles granted Plaintiff's motion to proceed in forma pauperis and then conducted an initial review of the complaint. See Dkt. No. 19. Magistrate Judge Peebles noted that Plaintiff's complaint failed to meet the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, as well as Twombly and its progeny. See id. at 7. In light of his pro se status, however, Magistrate Judge Peebles considered Plaintiff's subsequent filings to determine if he has set forth a plausible claim against any named Defendant. See id. at 8.

Magistrate Judge Peebles first found that Defendants Smith and White are entitled to absolute immunity because Plaintiff's claims against them are associated with his prosecution in Broome County. See id. at 8–9. Further, the report found that Plaintiff's claims brought pursuant to 18 U.S.C. § 241 should be dismissed because it is a criminal statute that does not give rise to a private cause of action. See id. at 9 n. 6 (citations omitted). Next, Magistrate Judge Peebles concluded that Plaintiff's claims against the Broome County Courts must be dismissed because they are an extension of the state, immune from suit under the Eleventh Amendment. See id. at 10. Thereafter, Magistrate Judge Peebles found that the Court should dismiss Plaintiff's claims

2014 WL 3670609

against Defendant American Bar Association ("ABA") because Plaintiff failed to allege any facts to plausibly suggest that Defendant ABA is a state actor, or that it acted under color of state law when allegedly violating Plaintiff's rights. *See id.* at 10–11. Finally, Magistrate Judge Peebles recommended that the Court dismiss all claims with prejudice, except those asserted against Defendant ABA. *See id.* at 12–13.

**\*2**  Currently before the Court are Magistrate Judge Peebles Report, Recommendation, and Order, and Plaintiff's objections thereto. Additionally pending before the Court are several letter motions, along with an amended complaint Plaintiff filed after the issuance of the Report, Recommendation, and Order.

### III. DISCUSSION

#### A. Redemptionist and sovereign citizen theories
Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" theory or the related "sovereign citizen" theory, which are frivolous legal theories that have been consistently rejected by federal courts. *See Monroe v. Beard,* 536 F.3d 198, 203 n. 4 (3d Cir.2008). The United States Court of Appeals for the Third Circuit explained:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates

> are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Id.* (citation omitted).[1]

[1]  The Court notes that Plaintiff was convicted of Falsifying Business Records in the First Degree.

Plaintiff also apparently adheres to the Redemptionist theory regarding the use of capital letters:

> Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

*McLaughlin v. CitiMortgage, Inc.,* 726 F.Supp.2d 201, 210 (D.Conn.2010) (internal quotation marks omitted); *see also Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753, 758–61 (W.D.Va.2007).

Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources. *See McLaughlin v,* 726 F.Supp.2d at 210 (providing detailed explanation of the redemptionist theory and rejecting it); *Charlotte v. Hanson,* 433 Fed. Appx. 660, 661 (10th Cir.2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted). A prisoner's attempt "to avoid the consequences of his criminal

2014 WL 3670609

conviction" based on the redemptionist theory, has been recognized as "legally frivolous," *Ferguson—El v. Virginia,* No. 3:10CV577, 2011 WL 3652327, *3 (E.D.Va. Aug.18, 2011),* and civil cases based on redemptionist and sovereign citizen theories have been found to be "utterly frivolous" and "patently ludicrous," using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.,* No. 2:09cv40, 2010 WL 398915, *4 (W.D.N.C. Oct.7, 2009).*

**\*3** In short, Plaintiff seeks to avoid the consequences of his conviction by suggesting he exists as two separate legal entities and that the State of New York and Broome County do not have jurisdiction over both entities and thus must release him and pay him damages. Such a theory is legally frivolous. *See Tirado v. New Jersey,* No. 10–3408(JAP), 2011 WL 1256624, *4–5 (D.N.J. Mar.28, 2011) (observing a similar argument "has arguably no legal basis"); *Marshall v. Fla. Dep't Corr.,* No. 10–CV–20101, 2010 WL 6394565, *1 (S.D.Fla. Oct.27, 2010).* Although the Court finds that these theories are frivolous, in light of his *pro se* status, the Court will consider each possible claim in greater detail.

**B. The Report, Recommendation, and Order**
Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—.... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, although the Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* . [3]

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

[3] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n. 3 (N.D.N.Y. Jan.29, 2008)* (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense,' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov.30, 1998)* (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

**\*4** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or

Muhammad v. Smith, Not Reported in F.Supp.3d (2014)

2014 WL 3670609

objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff's claims should be dismissed. As explained below, however, the Court rejects Magistrate Judge Peebles' recommendation insofar as it found that Plaintiff should be permitted a chance to amend his complaint as to Defendant ABA.

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism for redressing the deprivation of rights created by the Constitution or laws of the United States. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To state a cognizable claim under Section 1983, a plaintiff must allege that " '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution or laws of the United States.' " *Weiss v. Inc. Village of Sag Harbor,* 762 F.Supp.2d 560, 568

(E.D.N.Y.2011) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)).

**\*5** The Supreme Court, in *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), established a two-prong test for determining when a private party's actions can be deemed to satisfy Section 1983's requirement that the challenged conduct was "under color of state law." Actions of a private party can be deemed "fairly attributable" to the state, and therefore treated as action taken "under color of state law," when (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 33 (2d Cir.2010) (quoting *Lugar,* 457 U.S. at 937). A private party's actions may be attributable to the state under the second *Lugar* prong if it meets one of three tests: (1) "The 'compulsion test': the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) "The 'public function test': the entity 'has been delegated a public function by the [s]tate' "; or (3) "The 'joint action test' or 'close nexus test': the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Hollander,* 624 F.3d at 34 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (internal citations omitted)).

In the present matter, Defendant ABA is a private party which does not meet any of the three tests set forth above. Courts throughout the United States have already addressed this question and they have unanimously held that the American Bar Association is not a state actor for purposes of a Section 1983 action. *See Hu v. American Bar Ass'n,* 334 Fed. Appx. 17, 18–19 (7th Cir.2009) (finding that the district court properly dismissed the plaintiff's complaint because the ABA is not a state actor); *Lawline v. American Bar Ass 'n,* 956 F.2d 1378, 1385 (7th Cir.1992) (concluding that "private bar associations are not state actors for the purpose of Section 1983"); *Rohan v. American Bar Ass'n,* No. 93 CV 1338, 1995 WL 347035, *6–*7 (E.D.N.Y. May 31, 1995) (holding that the ABA is a professional association, not a state actor, even though admission to practice law in New York State requires graduation from an ABA-accredited law school, because "the State of New York has not explicitly delegated to the ABA its responsibility for setting the requirements that an individual must meet in order to be licensed as an attorney-at-law" and

2014 WL 3670609

"any conferral of monopoly status on the ABA by New York State does not convert the ABA into a state actor"); *see also The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.,* 608 F.3d 110, 121–22 (1st Cir.2010) (finding that state bar association was not a state actor).

**\*6** In the present matter, the Court agrees that Defendant ABA is not a state actor for Section 1983 purposes. New York has not expressly delegated to the ABA its responsibility for setting the requirements to practice law in New York; rather, to become a member of the New York Bar, an individual must comply with the Rules of the New York Court of Appeals on admission to practice. *See Rohan,* 1995 WL 347035, at \*5. Further, the ABA was neither established by the State of New York, nor is it funded or supported by the State. *See id.* at \*7 (citations omitted). Additionally, school accreditation has been recognized as a function of private entities, rather than one that "has been traditionally the exclusive prerogative of the State." *Id.* (quotation and other citation omitted).

Based on the foregoing, the Court finds that Defendant ABA is not a state actor. As such, the Court rejects Magistrate Judge Peebles' recommendation only insofar as the report recommended that the Court dismiss the claims against Defendant ABA without prejudice. Although the Court should generally permit a *pro se* litigant an opportunity to amend, dismissal with prejudice is appropriate where, as here, any amendment of the complaint would be futile.

Further, the Court finds that Magistrate Judge Peebles correctly determined that Defendants Smith and White are entitled to absolute immunity since Plaintiff has raised claims against them in their capacities as a judge and prosecutor. *See Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quotation omitted); *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts are barred by the Eleventh Amendment. *See Thomas v. Bailey,* No. 10–cv–51, 2010 WL 662416, \*1 (E.D.N.Y. Feb.22, 2010). Finally, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1975); *see also Brown v. Freeport Police Dept.,* Nos. 13 CV 4047, 13 CV 6514, 2014 WL 279847, \*5 (E.D.N.Y. Jan.23, 2014) (citation omitted).

**C. Plaintiff's amended complaint**

In his amended complaint, Plaintiff names as Defendants the "United States of America/Foreign Corporation of United States," and the State of New York, as well as the previously named Defendants. *See* Dkt. No. 34 at 1–2. In the amended complaint, Plaintiff claims that the "United States of America is guilty of criminal infringement of intellectual property, failure of consideration, act of indemnity, insurance fraud, securities fraud," as well as an apparent violation of section 34 of the Judiciary Act [4] and a conspiracy with the other named Defendants in violation of 18 U.S.C. § 241. *See id.* at 4. Plaintiff claims that Defendants' actions were "in violation of misnomer contracts of surety" and led to his "wrongfull [sic] imprisonment via commercial claims alleging DEATH and DEBT." *Id.* Plaintiff is seeking his immediate release, in addition to $150,000,000 "upon court ordered 'Release' from cestui que vie life insurance policy and foreign corporation of United States." *Id.* at 6. Additionally, Plaintiff asks the Court to "expunge all criminal proceedings, charges, finger prints, DNA, blood, mugshots, arrest/arrest record of alleged charges do to illegal commercial ... surety contracts alleging DEATH or DEBT upon 'RELEASE' being granted." *Id.*

4    Originally § 34 of the Judiciary Act of 1789, the Rules of Decision Act, now contained in 28 U.S.C. § 1652, reads: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." It is unclear how an improper application of the Rules of Decision Act violated Plaintiff's rights and Plaintiff's nearly incomprehensible filings provide no insight.

**\*7** Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. A plaintiff may not collect damages for his alleged wrongful imprisonment or conviction without first showing "that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, Plaintiff has made no such showing and a review of the Department of Corrections and Community Supervision website demonstrates that Plaintiff is still incarcerated.

Additionally, 18 U.S.C. § 241 is a criminal statute which does not create a private cause of action. *See Storm–Eggink v. Gottfried,* 409 Fed. Appx. 426, 427 (2d Cir.2011) (citing cases).

Again, as discussed above, Plaintiff's claims against Defendants Smith and White must be dismissed because they are entitled to absolute immunity. *See Hill,* 45 F.3d at 660–61 (quotation omitted); *DuQuin,* 320 F.Supp.2d at 40–41 (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts and the State of New York are barred by the Eleventh Amendment. *See Thomas,* 2010 WL 662416, at * 1. Further, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser,* 411 U.S. at 498–99; *see also Brown,* 2014 WL 279847, at *5 (citation omitted). Finally, Plaintiff alleges no facts against Defendant United States. Rather, the United States appears to have been included as a Defendant solely under Plaintiff's ludicrous sovereign citizen and redemptionist theories, which are subject to dismissal.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

## IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation, and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' October 16, 2013 Report, Recommendation, and Order is **ADOPTED in part and REJECTED in part;** [5] and the Court further

[5]    Magistrate Judge Peebles' Report, Recommendation, and Order is only rejected insofar as it recommended that the Court dismiss Defendant ABA without prejudice.

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

 **\*8 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall terminate all pending motions not addressed in this Memorandum–Decision and Order as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3670609

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8188396
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DRAWHORNE, Plaintiff,

v.

M. ALOISE et al., Defendants.

6:23-cv-01278-TJM-TWD
|
Signed November 27, 2023

**Attorneys and Law Firms**

KEVIN DRAWHORNE, 23-R-0208, Marcy Correctional Facility, P.O. Box 3600, Marcy, NY 13403.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

\*1 The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Kevin Drawhorne ("Plaintiff") alleging M. Aloise, Melinda Katz, Commissioner Davis, and The People of the State of New York violated his civil rights. (Dkt. No. 1.) Plaintiff, who is currently in the custody of New York State Department of Corrections and Community Supervision ("DOCCS") at Marcy Correctional Facility in Marcy, New York, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need. (Dkt. No. 2.) Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, he is granted permission to proceed IFP. (Dkt. Nos. 2, 3.)

**III. BACKGROUND**

Plaintiff initiated this action against Melinda Katz, M. Aloise, Commissioner Davis, and The People of the State of New York on October 13, 2023. (Dkt. No. 1.) The Court takes judicial notice Melinda Katz is the District Attorney of Queens County [1] and M. Aloise is a judge in the New York Supreme Court 11th Judicial District in Queens County, New York. [2]

[1]    DA Melinda Katz, https://queensda.org/team/da-katz/ (last visited Nov. 27, 2023).

[2]    Michael Aloise, BALLOTPEDIA, https://ballotpedia.org/Michael_Aloise (last visited Nov. 27, 2023).

Plaintiff has filed a threadbare complaint devoid of details. Plaintiff claims on January 5, 2023, Judge Aloise "violated" his rights "throughout the court proceedings." (Dkt. No. 1 at 4.) He further alleges he was deprived "from [h]aving good counsel and being full[y] able to cross-examine [his] defendant(s)." *Id.* Moreover, he "was never able to see [his] discovery nor attend [his] grand Jury." *Id.* Plaintiff claims he was "fully coerced" into taking a plea and never given a chance to create "a good defense." *Id.* According to Plaintiff, his attorney was "aware of all violations and still never objected to it." *Id.* Finally, DA Katz "acted out of color by stating wrongful facts of the case." *Id.* On February 23, 2023, Plaintiff's motions for a hardship hearing and to defer surcharges were denied. *Id.*

Plaintiff's first claim states on April 4, 2022, DA Katz violated his Fourteenth, Eighth, and Second Amendment rights by "not allowing" Plaintiff to testify at the Grand Jury, speak freely in court, and "not able to make a defense." *Id.* at 5.

\*2 Plaintiff's second claim states Judge Aloise would not allow Plaintiff to obtain new counsel. *Id.* He then states he was coerced into making a plea, but it is unclear if he is alleging Judge Aloise, DA Katz, or both coerced him into doing so. *Id.*

Plaintiff's third claim states The People of the State of New York violated Plaintiff's rights by "not allowing [him] to be

[ ] able to build a defense in his case" that he could "fight." *Id.* Finally, Plaintiff requests $15 million for violations of his constitutional rights, including "due process," "unlawfully imprisonment," "duress," mental anguish, and pain and suffering. *Id.*

## IV. DISCUSSION

### A. Legal Standard
The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b) (1)-(2); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a) (2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it

rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*3** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B. The People of the State of New York
To the extent Plaintiff seeks money damages against The People of the State of New York, which the Court construes as claims against the Queens County District Attorney's Office, those claims are barred by the Eleventh Amendment. *See Best v. Brown*, No. 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New*

*York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021). Therefore, the Court recommends Plaintiff's Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

### C. Commissioner Davis

"The standard set forth in *Twombly* and affirmed in *Iqbal* requires more than mere conclusory statements; rather, it demands sufficient factual allegations against a defendant to reasonably lead to the discovery of illegal conduct." *Johnson v. Gonzalez*, No. 9:14-CV-0745 LEK/CFH, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13, 2015) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56). "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (citation omitted).

The Court notes Plaintiff lists Commissioner Davis as a defendant in the caption of his complaint but fails to assert any allegations against him or her. *Id.* at 1, 3; *see Johnson*, 2015 WL 1179384, at *6; *Jaffer v. Chemical Bank*, No. 93-CV-8459, 1994 WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted"); *Serrano v. New York State Dep't of Envtl. Conservation*, No. 12-CV-1592, 2013 WL 6816787, at *15 (N.D.N.Y. Dec. 20, 2013) (dismissing the plaintiff's claims against two defendants who were listed as parties in the complaint and in the caption, but not elsewhere in the complaint).

**\*4** Therefore, the undersigned recommends dismissing the claims against Commissioner Davis without prejudice.

### D. DA Katz

To the extent Plaintiff seeks to sue DA Katz, she is likely protected by prosecutorial immunity.[3] Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

[3]    While the Court recognizes the issue of venue as it relates to claims against DA Katz and Judge Aloise arising out of Plaintiff's criminal proceedings in Queens, New York, a transfer of those claims would be futile. *See Robinson v. New York State Corr.*, No. 9:19-CV-1437 (DNH/TWD), 2020 WL 1703669, at *3 (N.D.N.Y. Apr. 8, 2020).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted). Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making of false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Imbler*, 424 U.S. at 431 n.34; *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Moreover, " '[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez*

*v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich*, 2022 WL 992885, at *5 n.4 ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry*, 2021 WL 3037709, at *6 (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment).

**\*5** Plaintiff's threadbare allegations in the complaint do not clarify the context of his claims. For instance, Plaintiff complains DA Katz violated his Fourteenth, Eighth, and Second Amendment rights by not allowing him to testify at the Grand Jury, speak freely in court, or make a defense. (Dkt. No. 1 at 5.) He also appears to allege DA Katz coerced him into taking "a Bid." *Id.* Nevertheless, Plaintiff appears to complain DA Katz violated his rights while performing her official duties as a prosecutor. *Simon*, 727 F.3d at 171. Because Plaintiff's allegations against DA Katz relate to non-investigative actions she has taken in her official capacity as a prosecutor, she is entitled to prosecutorial immunity. *Simon*, 727 F.3d at 171; *see, e.g., Matthews v. Cty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at *3 (N.D.N.Y. June 8, 2018) (dismissing claims against prosecutor on initial review because of prosecutorial immunity). Thus, Plaintiff's Section 1983 claims against DA Katz fail as a matter of law.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against DA Katz be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

### E. Judge Aloise

To the extent Plaintiff seeks to sue Judge Aloise, judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."). This immunity applies to state court judges who are sued in federal court pursuant to Section 1983. *Pizzolato v. Baer*, 551 F. Supp.

355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The only two circumstances in which judicial immunity does not apply is when he or she acts "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12. Again, while not entirely clear, to the extent Plaintiff complains of any wrongdoing related to a criminal proceeding, Judge Aloise would be entitled to absolute judicial immunity.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Judge Aloise be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

## V. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's IFP application [4] (Dkt. No. 2) is **GRANTED**; and it is further

[4] Plaintiff should note that although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff's claims against Commissioner Davis be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's claims against The People of the State of New York, DA Katz, and Judge Aloise be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*6** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

5    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 8188396

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 532572
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DRAWHORNE, Plaintiff,

v.

M. ALOISE et al., Defendants.

6:23-cv-1278
|
Signed February 8, 2024

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

\*1   The Clerk sent Plaintiff Kevin Drawhorne's *pro se*
Complaint brought pursuant to 42 U.S.C. § 1983 (Dkt. No.
1) to the Hon. Thérèse W. Dancks, United States Magistrate
Judge, for initial review. *See* November 27, 2023 Order and
Report-Recommendation (Dkt. No. 5). Plaintiff also moved
to proceed *in forma pauperis.* (Dkt. No. 2). Judge Dancks
granted Plaintiff's *in forma pauperis* application and then
analyzed the claims in the Complaint. (Dkt. No. 5).

Plaintiff names as defendants M. Aloise, Melinda Katz,
Commissioner Davis, and The People of the State of New
York. (Dkt. No. 1). Judge Dancks took judicial notice that
Melinda Katz is the District Attorney of Queens County, and
M. Aloise is a judge in the New York Supreme Court 11th
Judicial District in Queens County, New York. (Dkt. No. 5,
at 2). Judge Dancks also construed the claims against The
People of the State of New York as claims against the Queens
County District Attorney's Office, (Dkt. No. 5, at 5), and noted
that Plaintiff "lists Commissioner Davis as a defendant in the
caption of his complaint but fails to assert any allegations
against him or her." (Dkt. No. 5, at 6).

In examining the Complaint, Judge Dancks explained:

> Plaintiff has filed a threadbare complaint devoid of
> details. Plaintiff claims on January 5, 2023, Judge
> Aloise "violated" his rights "throughout the court
> proceedings." (Dkt. No. 1 at 4.) He further alleges he was
> deprived "from [h]aving good counsel and being full[y]
> able to cross-examine [his] defendant(s)." *Id.* Moreover, he
> "was never able to see [his] discovery nor attend [his] grand

> Jury." *Id.* Plaintiff claims he was "fully coerced" into taking
> a plea and never given a chance to create "a good defense."
> *Id.* According to Plaintiff, his attorney was "aware of all
> violations and still never objected to it." *Id.* Finally, DA
> Katz "acted out of color by stating wrongful facts of the
> case." *Id.* On February 23, 2023, Plaintiff's motions for a
> hardship hearing and to defer surcharges were denied. *Id.*

> Plaintiff's first claim states on April 4, 2022, DA Katz
> violated his Fourteenth, Eighth, and Second Amendment
> rights by "not allowing" Plaintiff to testify at the Grand
> Jury, speak freely in court, and "not able to make a
> defense." *Id.* at 5.

> Plaintiff's second claim states Judge Aloise would not
> allow Plaintiff to obtain new counsel. *Id.* He then states he
> was coerced into making a plea, but it is unclear if he is
> alleging Judge Aloise, DA Katz, or both coerced him into
> doing so. *Id.*

> Plaintiff's third claim states The People of the State of
> New York violated Plaintiff's rights by "not allowing [him]
> to be [ ] able to build a defense in his case" that he
> could "fight." *Id.* Finally, Plaintiff requests $15 million
> for violations of his constitutional rights, including "due
> process," "unlawfully imprisonment," "duress," mental
> anguish, and pain and suffering. *Id.*

(Dkt. No. 5, at 2-3).

After a thorough analysis, Judge Dancks recommended that
Plaintiff's claims against Commissioner Davis be dismissed
without prejudice, and Plaintiff's claims against The People
of the State of New York, DA Katz, and Judge Aloise be
dismissed with prejudice. *See generally id.* Plaintiff filed no
objections to Judge Dancks's recommendations, and the time
to do so has expired.

**II. DISCUSSION**

\*2   After examining the record, the Court has determined that
Judge Dancks's recommendations are not subject to attack for
plain error or manifest injustice. Thus, the Court will accept
and adopt the recommendations in the Order and Report-
Recommendation for the reasons stated therein.

**III. CONCLUSION**

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED;

2. Plaintiff's claims against Commissioner Davis are **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff's claims against The People of the State of New York, DA Katz, and Judge Aloise are **DISMISSED WITH PREJUDICE**;

4. If Plaintiff intends to file an amended complaint asserting claims against Commissioner Davis, he must do so within thirty (30) days of the date of this order;

5. If Plaintiff does so, the amended complaint should be presented to Judge Dancks for initial review;

6. If Plaintiff fails to file an amended complaint within this period of time, the Clerk is respectfully instructed to close the file in this action without further order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 532572

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 30 of 129

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

2020 WL 409744
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rodney JOSEPH, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

18-cv-7197 (NSR)
|
Signed 01/23/2020

**Attorneys and Law Firms**

Rodney Joseph, Napanoch, NY, pro se.

Rebecca Lynn Johannesen, NYS Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** *Pro se* Plaintiff, Rodney Joseph ("Plaintiff"), formerly incarcerated at Sullivan Correctional facility, brings this action under 42 U.S.C. § 1983, asserting claims of deliberate indifference to his medical needs, forcible touching, assault, retaliation, denial of due process, and impeding religious practice. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff sues 44 medical staff members, kitchen staff members, correctional officers, and correctional officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Anthony Annucci, William Keyser, Edward Burnett, Gail Williams, Angelo Justiniano, Corey Proscia, Joseph Maxwell, Lane Kortright, Swany Reid, Frank Decker, Samuel Encarnacion, Stainislaus Ogbonna, Jefrysson Aldana, Scott Christie, Colleen Bennett, Tanya Pomeroy, Wladyslaw Sidorowicz, Janice Wolf, S.T. Herman, Epifanio Tolentio, Kevin Miller, Wayne Jordan, William Beach, Renee Askew, Michael Wood, Van Fuller, Gina Maliga, Heather Wyatt, William Elberth, Kellyanne Giminiani, Christopher Conway, Blain Reddish, Mark Puerschner, David Jurgens, Edward Bonnell, Shaun Braisington, Joseph Franke, Matthew DeFrank, Chester Stungis, Robert Depaolo, and Adam Jarosz (the "Represented Defendants"). [1] (*Id.*)

[1] Defendants Ginger Eggler, "Ginsin," and Alan Hanson have not been served. (*See* ECF Nos. 10, 11, and 15; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 80 ("Defs.' Mot.") at 8, n.1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Represented Defendants have moved to dismiss the Complaint. (*See* ECF No. 79.) Plaintiff has not responded to the motion; thus, per a memorandum endorsement dated August 5, 2019, the Court deemed the motion fully submitted. (*See* ECF No. 81.) For the following reasons, the Represented Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

**I. Factual Allegations**
The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).*

**a. Plaintiff's Medical Condition and Treatment**
Plaintiff asserts that in or about 2008, after suffering a heart attack, he was placed on diabetic medications by a Sullivan Correctional Facility ("Sullivan") doctor. (Compl. at 18.) Sometime in 2016, however, he was taken off the diabetic medications by the medical staff at Sullivan. (*Id.*) Shortly after being taken off the diabetic medications, Plaintiff began to suffer pain in his arms, difficulty breathing, and an increased heart rate. (*Id.*) He complained to the Medical Department on a sick call visit, but only received 30 days off from work. (*Id.*) Plaintiff asserts that the pain got worse and he kept going to sick call but nothing was done to alleviate his pain. (*Id.*) In or about June 2017, after going to emergency sick call with "unbearable pain," Plaintiff suffered another heart attack and was rushed to a hospital where he underwent quadruple-bypass heart surgery. (*Id.*) Plaintiff asserts the following: the medical staff taking him off the diabetic medications led to his heart attack; he is presently in severe pain but is not receiving all of the recommended medications prescribed by a specialist; and he is possibly suffering the symptoms of another imminent heart attack or stroke. (*Id.* at 18–19.)

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

**b. January 11, 2018 Incident**

**\*2**  Plaintiff also asserts forcible touching and assault claims against Defendant Correctional Officer Wyatt ("Wyatt") stemming from an incident that occurred on or about January 11, 2018. (*Id.* at 19.) Plaintiff alleges that, on January 10, 2018, he filed a grievance against Wyatt. (*Id.*) He alleges that after he filed the grievance, when he delivered feed-up bags for other inmates, Wyatt ordered him on the wall for a pat frisk although he had previously been pat frisked when he left the kitchen. (*Id.*) Plaintiff claims that while he was on the wall, Wyatt "started squeezing and poking in the areas where [he] had [his] quadruple-by-pass surgery, chest, arms, legs, and private parts." (*Id.* at 20.) Plaintiff alleges that Wyatt's actions caused him chest pains and led to a one-week hospital stay at Albany Medical Center because most of his arteries were blocked. (*Id.*)

**c. Officers' Retaliation**

Plaintiff asserts that Wyatt acted in retaliation for Plaintiff's filing of the grievance against her. (*Id.*) Plaintiff also claims that he was subjected to retaliation by other correction officers for the filing of grievances. (*Id.*) He claims the following retaliatory actions: he was issued a fabricated misbehavior report and his job assignment was taken away on or about June 20, 2018, despite an "excellent work evaluation"; DOCCS staff would not allow him to notify his family when he was admitted to an outside hospital, or allow him to call his family; his cell was unreasonably searched five out of seven days; he was denied access to medication; and his religious callout was cancelled without a security reason. (*Id.* at 21–22.)

**d. Incident with Correctional Officer Elberth**

Finally, Plaintiff alleges that while conducting a pat frisk, Correctional Officer Elberth ("Elberth") told him to reach back with his left hand and take off his right boot. (*Id.* at 22.) When Plaintiff told Elberth that he was unable to stretch out like that because of his medical issues, Elberth grabbed his left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall, causing him pain. (*Id.*) Plaintiff claims that Elberth then did the same thing to his right leg, despite Plaintiff informing Elberth that he was in pain. (*Id.*) After the incident, Plaintiff went to emergency medical and had to be rushed to the hospital for a "minor heart attack." (*Id.*) Plaintiff claims that the attack was caused by Elberth's actions, and now every time he sees Elberth, the officer threatens him. (*Id.*) Plaintiff asserts that Elberth also

sends unspecified threatening messages to him through other correction officers. (*Id.*)

**LEGAL STANDARD**

**I. Rule 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

**\*3**  *Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**II. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 32 of 129

2020 WL 409744

the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

### III. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

### I. Defendants Who Are Only Named in the Caption

As an initial matter, Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are only named in the caption and the complaint contains no allegations that they violated the law or otherwise caused injury to the Plaintiff.

Plaintiff fails to assert personal involvement on the part of these 40 defendants in this matter. In order to hold a defendant responsible for a constitutional deprivation, Plaintiff must demonstrate, *inter alia*, the defendant's personal involvement.

*Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692–95 (1978). Supervisory officials may be personally involved within the meaning of § 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

**\*4** Here, Plaintiff fails to allege facts of any personal involvement by the 40 aforementioned defendants. They are named in the caption only. The body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner. For this reason, the claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are dismissed without prejudice for lack of personal involvement.

### II. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm ... need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

Defendant does not allege that any Defendant was involved in his medical care or treatment—his Complaint mentions that "DOCCS Staff" took him off the diabetic medications, and that he made complaints to the "Medical Department" at sick call. (*See* Compl. at 18.) While chest pain resulting from clogged arteries and heart attacks surely constitute serious medical conditions,[2] Plaintiff has failed to allege any Defendant's involvement in, let alone any Defendant's deliberate indifference to, Plaintiff's medical care. Therefore, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

[2]     "[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury).

It is possible that Plaintiff intended to bring claims against certain named defendants from the caption, whom he has identified as serving in medical roles at Sullivan: Ginger Eggler (Nurse Administrator 1); Colleen Bennett (Nurse Administrator 2); Wladyslaw Sidorowicz (Facility Doctor); and Janice Wolf a/k/a Janice Wolf-Friedman (Facility Doctor). To the extent that Plaintiff can provide more factual allegations relating to these four defendants with respect

to Plaintiff's alleged medical indifference claim, Plaintiff is granted leave to replead that claim.

## III. Retaliation Under the First Amendment

**\*5** Plaintiff's claims against several prison officials regarding alleged retaliatory action sound in the First Amendment. To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation ... Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity —that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 34 of 129
Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

virtually any adverse action taken against a prisoner by a prison official —even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.... Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

### a. January 11, 2018 Incident and Cell Searches

Plaintiff alleges that Defendant Wyatt retaliated against him because he filed a grievance against Wyatt on January 10, 2018, when Plaintiff discussed the grievance with Defendant Sergeant Fuller. (Compl. at 19.) Plaintiff alleges that this retaliation took the form of a pat frisk on January 11, 2018, in which Wyatt "squeez[ed]" and "pok[ed]" his chest, arms, legs, and "private parts." (*Id.* at 20.) Plaintiff further alleges that Area Sergeant Defendant Hanson told him that "if [he] did not sign off on this grievance, [he] was going to have a whole lot of problems." (*Id.* at 20.) Additionally, Plaintiff alleges that his cell was searched in an "unreasonable manner" five out of seven days. (*Id.* at 21.)

On these issues, Plaintiff has failed to state a claim for relief because "cell searches and pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015). This is "because inmates have no reasonable expectation of privacy in their prison cells" and therefore "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005); *see also Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches and pat frisks are an ordinary part of prison life and ... do not deter the average inmate from continuing to exercise ...

First Amendment rights"). Furthermore, the Complaint does not link the cell searches to any particular defendant. (*See* Compl. at 21.) Accordingly, even if retaliatory in nature, Plaintiff's claims against Defendants Wyatt, Hanson, and any other defendants regarding these incidents must be dismissed with prejudice. [3]

[3]
    To the extent that Plaintiff's allegation suggest that Defendant Wyatt used excessive force, these allegations also fail to state a claim upon which relief can be granted. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. *See Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *7 (S.D.N.Y. Dec. 18, 2003) (rejecting Eighth Amendment claim where defendant's action in pressing plaintiff's face into a wall while conducting a pat frisk was "consistent with a good faith attempt to maintain prison discipline and order" and lacked "malicious" intent).
    To the extent that Plaintiff alleges that Defendant Wyatt committed offenses under the New York State Penal Law, this claim must be dismissed because the law does not provide a private right of action to enforce rights allegedly created by this provision. *See Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995) ("As a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction.").

### b. Loss of Job Assignment

**\*6** Plaintiff further alleges that his job assignment was taken away from him due to a "fabricated misbehavior report" as retaliation for Plaintiff's filing of harassment grievances. (Compl. at 21.) Plaintiff notes that despite his "excellent work evaluation," the proffered basis for his termination was that Plaintiff "do[es] not get along with other inmates and staff." (*Id.*) This claim similarly fails on the pleadings.

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.' "). Furthermore, the thin allegations contained in the complaint are "wholly conclusory with no plausible nexus between the grievance

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

and the misbehavior report." *White v. Bergenstock*, No. 08 Civ. 717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009). Plaintiff's Complaint does not contain any allegations as to the nature of the misbehavior report that led to the loss of his job, who wrote the misbehavior report, nor does it connect the writer of that misbehavior report to the grievances in any way. *See Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding plaintiff's allegation that officer "wrote [him] up for revenge" was conclusory and insufficient to state a plausible retaliation claim).

Consequently, these claims are dismissed without prejudice. To the extent that Plaintiff can provide more factual allegations relating to the author of the misbehavior report and a connection between Plaintiff's grievance, the misbehavior report, and loss of Plaintiff's job, Plaintiff is granted leave to replead his claim.

## IV. First Amendment Freedom of Speech

Plaintiff additionally asserts that "DOCCS staff" did not allow him to notify his family about his treatment at an outside hospital, and that he was not allowed to call them. (Compl. at 21.) This amounts to a First Amendment freedom of speech claim, which is a cognizable claim under § 1983. *See Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection."). First Amendment rights "may not be infringed without good cause," and "there must be a showing of a substantial governmental interest serving the legitimate and reasonable needs and exigencies of the institutional environment ... to warrant such limitations upon an individual inmate's rights to communicate." *Id.* (internal citations omitted). But, as courts considering prison telephone restrictions have agreed, "an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (citing support from First, Sixth, Seventh, Eighth, Fifth, and Ninth Courts of Appeals). The same holds true with regard to mailing non-legal letters. *See Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("[A] prisoner's right to mail letters to his family or friends is not absolute.").

In any case, allegations of infringement of rights must have some specificity. Again, Plaintiff has failed to allege that any Defendant in this action was involved in this denial. For the reasons outlined above, because a defendant's personal involvement is a necessary element of a 1983 claim, *see*

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), this claim must be dismissed without prejudice.

## V. First Amendment Free Exercise

 *7 Plaintiff's next claim pertains to the exercise of his religious beliefs, which he claims were infringed by an "intentional" cancellation of his religious "call-out." (Compl. at 22.) Plaintiff alleges that "there is no security reason for this." (*Id.*)

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore ... religious beliefs in accordance with the dictates of their conscience.' " *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief. *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]" *Salahuddin*, 467 F.3d at 275.

In the present action, Plaintiff has again failed to allege that any Defendant was involved in the cancellation of his religious call out. Plaintiff does not specify how often or why his callout was canceled. Without more, Plaintiff cannot plausibly allege that his sincerely held religious beliefs were "substantially burdened." *See Williams v. Weaver*, No. 9:03CV0912(LEK/GHL), 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (denial of access to two weekly religious services does not constitute substantial burden); *c.f. George v. Cty. of Westchester*, NY, No. 13 CV 4511 VB, 2014 WL 1508612, at *4 (S.D.N.Y. Apr. 10, 2014) (finding substantial burden plausibly alleged where plaintiff

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 36 of 129

2020 WL 409744

was denied congregate religious services "repeatedly" over two periods totaling approximately ten months). Accordingly, this claim is also dismissed without prejudice.

## VI. Eighth Amendment Excessive Force

Next, Plaintiff's description of the incident with Correctional Officer Elberth may be read to present an Eighth Amendment excessive force claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind.' " *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

**\*8** The objective prong, requiring the alleged conduct to be " 'sufficiently serious' to reach constitutional dimensions," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), is a context-specific standard that focuses on the harm done given "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The Supreme Court has explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. Therefore, "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] *per se* ... whether or not significant injury is evident." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290(KMK), 2019 WL 3239850, at \*14 (S.D.N.Y. July 18, 2019).

### a. Excessive Force Analysis

Here, during the course of a pat frisk, Plaintiff alleges that Elberth instructed him to reach back with his left hand and take off his right boot. (Compl. at 22.) Plaintiff did not comply, and instead told Elberth that "he could not reach back like that because he had a Qua[dru]ple By Pass and was unable to stretch back like that." (*Id.*) In response, Elberth grabbed Plaintiff's left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall.

(*Id.*) Plaintiff further specifies that Elberth retorted, "How does that feel?", to which Plaintiff responded that he was in pain. (*Id.*) Elberth then repeated the action using Plaintiff's right leg. (*Id.*) Subsequently, Plaintiff suffered a "minor heart attack." (*Id.*)

Defendants argue that the amount of force described by Plaintiff was commensurate with the need to conduct a pat frisk and does not rise to the level of a constitutional violation. The Court recognizes that "a pat frisk, involving some physical contact, is a standard procedure inside a prison." *Beckles v. Bennett*, No. 05 CIV 2000 (JSR), 2008 WL 821827, at \*20 (S.D.N.Y. Mar. 26, 2008). As such, allegations of aggressive pat frisks have generally not been found to be "sufficiently serious" to present viable excessive force claims. *See Tavares v. City of New York*, No. 08 CIV. 3782 PAE JCF, 2011 WL 5877550, at \*6 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted*, No. 08 CIV. 3782 PAE, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011) (finding "actions taken consistent with a forceful pat frisk—the most serious contact alleged by the plaintiff—are not sufficiently 'repugnant to the conscience of mankind,' to give rise to an Eighth Amendment claim."); *Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at \*6 (S.D.N.Y. Dec. 18, 2003) (pressing inmate's face into the wall while conducting pat frisk was "commensurate with the need to conduct a pat frisk"); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (finding level of force applied in "aggressive pat frisks" does not rise to a constitutional violation); *see also Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force found where, while handcuffing plaintiff, officer pulled plaintiff's hands behind his back and pushed him against a bar).

While the level of force alleged here by Plaintiff may not, on its own, rise to the level of a constitutional violation, Plaintiff has alleged extenuating circumstances that distinguish his case from those involving run-of-the-mill pat frisks. Plaintiff alleges that he informed Elberth of his medical condition and heart surgery, which prevented him from moving his body as Elberth had instructed. Plaintiff further alleges that he did suffer physical pain as a result of Elberth's actions—and informed Elberth of this—but that Elberth disregarded Plaintiff's condition and continued to forcefully move Plaintiff's legs. Plaintiff has thus averred sufficient facts to plausibly claim that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6; *see also Santiago v. Westchester Cty.*, No. 13–CV–1886, 2014 WL 2048201, at \*5 (S.D.N.Y. May

2020 WL 409744

19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked him up off the ground while squeezing his throat ... lead to a plausible inference that the force inflicted was malicious and wanton").

**\*9** This conclusion is reached by construing the allegations in the Complaint in a light most favorable to Plaintiff, and bearing in mind Plaintiff's status as a *pro se* litigant. Evidence uncovered during discovery may ultimately prove that the force employed by Defendant Elberth was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial. *See Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at \*9 (S.D.N.Y. May 16, 2016); *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide.") (collecting cases). As such, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claims against Defendant Elberth.

**b. Qualified Immunity Defense**

Defendants argue that Defendant Elberth should be entitled to the defense of qualified immunity. The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at \*4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to

dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

It is well-settled that freedom from the use of excessive force is a clearly established constitutional right. *See, e.g., Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). As discussed above, the Complaint sufficiently alleges a violation of Plaintiff's clearly established constitutional right to be free from excessive force under the Eighth Amendment. Further, "nothing at this stage of the proceedings suggests that [the defendant] reasonably believed his actions to be lawful at the time of the challenged act." *Santiago*, 2014 WL 2048201, at \*5. Consequently, the Court does not find the application of qualified immunity to be warranted at this juncture.

**VII. Defendant Fuller**

The only other Defendant named in the Complaint, Defendant Fuller, is also not alleged to have been personally involved in any constitutional violation. Plaintiff's only allegation against Defendant Fuller is that Plaintiff and Defendant Fuller engaged in a discussion about Plaintiff's intent to file a grievance against Defendant Wyatt. (Compl. at 19.) These allegations fail to show Defendant Fuller's personal involvement in any constitutional violation, and for the same reasons as previously stated, he is therefore dismissed from this action without prejudice.

**CONCLUSION**

**\*10** For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Plaintiff's excessive force claims against Defendant Elberth. The motion is granted as follows:

The following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's First Amendment retaliation claims against Defendants Wyatt, Hanson, and any other defendants regarding the January 11, 2018 incident and cell searches.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 38 of 129

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

The following of Plaintiff's claims are dismissed *without prejudice*:

- Plaintiff's Eighth Amendment medical indifference claims against Eggler, Bennett, Sidorowicz, and Wolf;

- Plaintiff's First Amendment retaliation claim regarding the loss of his job assignment;

- Plaintiff's First Amendment freedom of speech claim;

- Plaintiff's First Amendment free exercise claim; and

- All remaining claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, and Fuller.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Represented Defendants' Motion to Dismiss at ECF No. 79.

Plaintiff shall have thirty-five days from the date of this Opinion, on or before February 27, 2020, to amend the Complaint as to those claims that are dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file an amended complaint within thirty-five days, and he cannot show good cause to excuse such a failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which remaining Defendants should respond. The remaining Defendant Elberth is directed to file an answer to the Complaint on or before March 19, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 9, 2020.

The Clerk of the Court is respectfully directed to terminate Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, Fuller, Wyatt, and Hanson. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

**\*11** SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**
2020 WL 409744
Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 39 of 129

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other:

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

| First Name | Middle Initial | Last Name |
|---|---|---|

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

| County, City | State | Zip Code |
|---|---|---|

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other:

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:

Date(s) of occurrence:

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 40 of 129

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated _____        Plaintiff's Signature _____

First Name _____ Middle Initial _____ Last Name _____

Prison Address _____

County, City _____ State _____ Zip Code _____

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                    Rev. Jan. 2012
-----------------------------------------------------------------x

                                                                CIVIL CASE DISCOVERY PLAN
                              Plaintiff(s),                      AND SCHEDULING ORDER

        - against -

                              Defendant(s).        _____ CV _____ (NSR)

-----------------------------------------------------------------x

    This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
        _____

                                        _____
                                        Nelson S. Román, U.S. District Judge

**All Citations**

Not Reported in Fed. Supp., 2020 WL 409744

---

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 41 of 129

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action
*pro se* on June 2, 2022, claiming Dr. Mary O'Connor
("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt.
No. 1.) Plaintiff simultaneously moved to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's
motion to proceed IFP, the undersigned GRANTS the motion
for purposes of this review. *See id.* The undersigned now
considers the sufficiency of the allegations set forth in the
Complaint under 28 U.S.C. § 1915(e). For the reasons
discussed below, the undersigned recommends that the Court
dismiss Plaintiff's Complaint in its entirety with leave to
amend. (Dkt. No. 1.)

## I. SUMMARY OF THE COMPLAINT [1]

[1]    The following recitation of facts is drawn from
the Complaint, which the Court accepts as true for
purposes of initial review. *See, e.g., LaTouche v.
Rockland County,* No. 22-CV-1437 (LTS), 2022
WL 953111, at \*1 (S.D.N.Y. Mar. 29, 2022);
*Walker v. City of New York,* No. 20-CV-5240 (PKC)
(LB), 2021 WL 1838277, at \*1 n.1 (E.D.N.Y. May
7, 2021).

This is the second of two actions Plaintiff initiated against
various individuals stemming from a child custody dispute in

New York State Family Court. (*See* Dkt. No. 1; *see also* Case
No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker
I*"), Plaintiff claimed several New York State Family Court
Judges, two private attorneys, and the Averill Park School
District violated her First and Fourteenth Amendment rights.
(Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff
restates and reasserts many of the same claims against Dr.
Mary O'Connor, a private individual ordered by the New State
Family Court to render forensic psychological evaluations in
the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.)
Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction
under 28 U.S.C. § 1331 and § 1343, purporting to advance
several causes of action under 42 U.S.C. § 1983 and § 1985.
(Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and
standards established and/or maintained by Defendant/s [sic]
violate the Right to Free speech under the First Amendment,
and the Due Process and Equal Protection clauses of the
Fourteenth Amendment to the U.S. Constitution." *Id.* at
4. Plaintiff accordingly recycles many of the same claims
against Dr. O'Connor that she asserted against the Defendants
in *Walker I*. *See id.* at 9-31. Through the first cause of action,
Plaintiff claims Dr. O'Connor "religiously discriminated
against" her in violation of the First Amendment. *Id.* at 9.
In her second cause of action, Plaintiff claims Dr. O'Connor
retaliated against her in violation of the First Amendment.
*Id.* at 10. By her third cause of action, Plaintiff claims
Dr. O'Connor "deprived [her] of the rights of a mother to
her children and due process and freedom of speech" in
violation of the First and Fourteenth Amendments. *Id.* at
12-13. Through her fourth cause of action, Plaintiff claims
Dr. O'Connor discriminated against her. *Id.* at 14-19. In her
fifth cause of action, Plaintiff claims Dr. O'Connor used her
position to "maliciously intentionally harm and pain on
the Plaintiff." *Id.* at 20. By her sixth and final cause of
action, Plaintiff claims Dr. O'Connor engaged in sex bias
discrimination. *Id.* at 25.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints
filed *in forma pauperis,* and "complaints in which a prisoner
seeks redress from a governmental entity or officer or
employee of a governmental entity." 28 U.S.C. § 1915(e)(2)
(B) (governing complaints filed *in forma pauperis*); 28 U.S.C.
§ 1915A (governing complaints filed by prisoners against
the government). When reviewing these types of complaints,
this Court must "identify cognizable claims or dismiss the
complaint, or any portion of the complaint, if the complaint ...

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

[2]     Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. See *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

#### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. See *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

[3]     Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 43 of 129

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g.*, *Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jensen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL

5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g.*, *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 44 of 129
Walker v. O'Connor, Not Reported in Fed. Supp. (2022)
2022 WL 2341420

(GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

4       Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

**\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

5       The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

**C. Jurisdiction**

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

**\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL

**Walker v. O'Connor, Not Reported in Fed. Supp. (2022)**

2022 WL 2341420

226798, at \*11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at \*3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at \*3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at \*3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at \*4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at \*3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at \*7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at \*4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

"The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at \*4 n.4; *Amato*, 2022 WL 226798, at \*10; *Fernandez*, 2014 WL 5823116, at \*4.

**IV. CONCLUSION**

\*7 For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 46 of 129

**Walker v. O'Connor, Not Reported in Fed. Supp. (2022)**
2022 WL 2341420

the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805462

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton
Road, Sand Lake, NY 12153.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker
("plaintiff") filed this action alleging that defendant, a
private individual ordered by a state court to render forensic
psychological evaluations in an underlying child custody
dispute, discriminated against her. Dkt. No. 1. Along with her
complaint, plaintiff sought leave to proceed *in forma pauperis*
("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley
Dancks granted plaintiff's IFP Application for the purpose of
an initial review and advised by Report & Recommendation
("R&R") that plaintiff's complaint be dismissed with leave

to amend. Dkt. No. 4. Although Judge Dancks observed that
plaintiff's claims were almost certainly barred by various
jurisdictional or immunity principles, in light of plaintiff's
*pro se* status Judge Dancks concluded that plaintiff should be
given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 4. Upon review for clear
error, the R&R will be accepted and adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this
Order in which to amend her pleading in accordance with
the instructions set forth in Judge Dancks's Report &
Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this
thirty-day period, the Clerk of the Court shall enter a judgment
accordingly and close the file without further Order of this
Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

2022 WL 226798

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

[1]     Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the

original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED COMPLAINT**

**A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**\*2** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 49 of 129
Amato v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 226798

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### B. Summary of the Amended Complaint

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

[2]    Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3**  I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.*[3]

[3]
Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them[4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable

injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

[4]
Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after

2022 WL 226798

he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15. [5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

[5]     However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16.

He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

6    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

## C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> *6    (b)    Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzi v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 53 of 129
Amato v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 226798

bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

**\*7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at *4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

[7]   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v.*

*Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

[8]     Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.'" *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 55 of 129

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

liability under Title VII.") (quotation marks and citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at \*9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at \*18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed.[9]

9      The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at \*4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity,[10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

10     As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at \*5 (S.D.N.Y. June 28, 2019) (allowing ADA claims

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 56 of 129

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

[11]    *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

[12]    *Younger v. Harris*, 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g., Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at \*8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at \*3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 57 of 129

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive

such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g., Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

[13]  At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

[14]  If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

### V. PLAINTIFF'S ADDRESS

Amato v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 226798

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

> [15]   While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

> [16]   Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT**

**PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

> [17]   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

---

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.            11

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 59 of 129

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

2019 WL 2437849
United States District Court, E.D. New York.

Kieth TOMCZYK, Plaintiff,

v.

NEW YORK UNIFIED COURT SYSTEM, Office
of Court Administration, County of Suffolk, N.Y.,
Suffolk County 10th Judicial District, H. Patrick Leis,
III, in Official Capacity and Personal Capacity, Jennifer
Lippman, Esq., Theresa Mari, Esq., Sari Friedman,
Esq., Jessica Tomczyk, State Defendants John Does
1-10 and Jane Does 1-10, Suffolk County Defendants
John Does 1-10 and Jane Does 1-10, Defendants.

19-CV-2753(JS)(AYS)
|
Signed 06/10/2019

**Attorneys and Law Firms**

For Plaintiff: Kieth Tomczyk, pro se, 21 Soloff Road,
Massapequa, New York 11758.

For Defendants New York Unified, Court System, Office of
Court Administration, H. Patrick Leis, III: Ralph Pernick,
Esq., Office of the N.Y. State Attorney General, 200 Old
Country Road, Suite 240, Mineola, New York 11501.

For Defendants County of Suffolk, N.Y.: Brian C. Mitchell,
Esq., Suffolk County Dept. of Law, 100 Veterans Memorial
Highway, P.O. Box 6100, Hauppauge, New York 11788.

For Defendants Sari Friedman, Esq.: Jenna Lyn Fierstein,
Esq., Matthew K. Flanagan, Esq., Catalano Gallardo &
Petropoulos, LLP, 100 Jericho Quadrangle, Suite 326,
Jericho, New York 11753.

For Defendants Suffolk County 10th District, Jennifer
Lippman, Esq., Theresa, Mari, Esq., Jessica Tomczyk, John
and Jane Does: No appearances.

MEMORANDUM & ORDER

SEYBERT, District Judge

*1 On May 10, 2019, Kieth Tomczyk ("Plaintiff"), acting
pro se, filed a Complaint in this Court against the New
York Unified Court System ("Court System"), the Office
of Court Administration ("OCA"), the County of Suffolk,

New York ("Suffolk County"), Suffolk County 10th Judicial
District ("10th District"), the Honorable H. Patrick Leis, III,
in his official capacity and personal capacity ("Justice Leis"),
Jennifer Lippman, Esq. ("Lippman"), Theresa Mari, Esq.
("Mari"), Sari Friedman, Esq. ("Friedman"), Jessica Tomczyk
("Tomczyk"), State Defendants John Does 1-10 and Jane
Does 1-10 ("State Does 1-20"), Suffolk County Defendants
John Does 1-10 and Jane Does 1-10 ("County Does 1-20"
and collectively, "Defendants"). The Complaint challenges
an on-going divorce and child support enforcement action,
Jessica Tomczyk v. Kieth Tomczyk, Index No. 33914/2013,
in the New York State Supreme Court, Suffolk County, and
seeks "damages, injunctive relief and declaratory relief for
violations of his fundamentally secured rights, for violating
his parental rights through a campaign of parental alienation,
and violating his fundamental rights through a campaign
of judicial terrorism." (Compl. ¶ 1.) More specifically, in
addition to alleging a deprivation of his First, Fourth, Fifth,
Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment
rights, Plaintiff claims that the "Defendants conducted a
RICO enterprise of racketeering, extortion, fraud, wire fraud,
and mail fraud for profit and gain against Plaintiff as a litigant
and taxpayer, thus violating 18 U.S.C. §§ 1961-68, 18 U.S.C.
§ 1951, 18 U.S.C. § 1341, and other violations and causes of
action." (Compl. ¶¶ 3-4, 17.) Plaintiff paid the filing fee to
commence this action.

Because Plaintiff seeks to challenge his on-going state court
divorce/child support enforcement action, this Court lacks
subject matter jurisdiction to adjudicate his claims for the
reasons that follow.

BACKGROUND

Plaintiff's voluminous Complaint is eighty-three typed pages
and is comprised of 281 paragraphs with an additional
771 pages of exhibits. Though styled as a civil rights and
RICO action, Plaintiff seeks to challenge rulings made in an
underlying state court divorce and child support enforcement
case pending in New York State Supreme Court, Suffolk
County (the "State Court"), under Index No. 33914/2013 (the
"State Case"). (See generally Compl., D.E. 1.) Plaintiff also
seeks to recover a damages award in the sum of $ 200 billion
dollars on each of his claims. (Compl. at 55-57, 60, 62, 69,
72, 74, 77-79, 81-82.)

Plaintiff is no stranger to this Court. The instant Complaint
is Plaintiff's second attempt to bring his on-going state

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

court matrimonial and child support enforcement action to this Court. In June 2017, Plaintiff paid the Court's $ 400 filing fee and unsuccessfully sought to remove the State Case to this Court (see Tomczyk v. Tomczyk, 17-CV-3630 ("Tomczyk I")). By Memorandum and Order dated June 29, 2017, the Court sua sponte remanded the action to the State Court pursuant to 28 U.S.C. § 1447. (See Tomczyk I M&O, D.E. 6.) The Court cautioned Plaintiff that, "under the domestic relations exception to this Court's subject matter jurisdiction, 'divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds[ ]' [quoting] Marshall v. Marshall, 547 U.S. 293, 308, 126 S. Ct. 1735, 1746, 164 L. Ed. 2d 480, 495 (2006)" and that "jurisdiction over the Complaint is likely barred by the domestic relations exception to the jurisdiction of the federal courts." (See Tomczyk I M&O at 4.) Notwithstanding the Court's guidance, Plaintiff has paid the $ 400.00 filing fee again and continues his attempt to bring the State Case to this Court.

### DISCUSSION

#### I. Standard of Review

**\*2** Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Further, regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, sua sponte, if it determines that the court lacks jurisdiction over the matter. FED. R. CIV. P. 12(h)(3); Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000).

#### II. The Domestic Relations Exception Bars Plaintiff's Claims

Under the domestic relations exception, "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds. Marshall, 547 U.S. at 308, 126 S. Ct. at 1746 (internal quotation marks and citation omitted); Mitchell-Angel v. Cronin, 101 F.3d 108 (2d Cir. 1996) (unpublished opinion); Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (dismissing pro se complaint seeking to challenge state court child custody order because federal court review was barred by the domestic relations exception) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2214-15, 119 L. Ed. 2d 468 (1992)). This exception is based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack." Thomas v. N.Y. City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Applying these principles, courts in the Second Circuit have abstained from controversies that, regardless of how a plaintiff characterizes them, "begin and end in a domestic dispute." Tait v. Powell, 241 F. Supp. 3d 372, 377 (E.D.N.Y. 2017) (citation and quotation marks omitted); see also Martinez v. Queens Cty. Dist. Atty., 596 F. App'x 10, 12 (2d Cir. 2015) (applying domestic relations exception to plaintiff's conspiracy claim against state judges and officials involved in divorce proceeding and reasoning that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," even if parties are not seeking a custody decree).

As is readily apparent, Plaintiff's claims here seek to challenge determinations in the State Case. Such claims unquestionably implicate the judicially recognized exception to federal subject matter jurisdiction in cases involving domestic relations. Ankenbrandt, 504 U.S. at 714, 112 S. Ct. at 2221 ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.") (internal quotation marks and citation omitted).

Although Plaintiff styles some of his claims as raising statutory and constitutional issues, the allegations stem from an on-going state domestic relations matter and are thus outside this Court's jurisdiction. McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (former husband's 42 U.S.C.

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

§ 1983 action in which he claimed that his constitutional rights were violated in proceedings in which former wife obtained upward adjustment of child support would require the court to "re-examine and re-interpret all the evidence brought before the state court" in the earlier state proceedings and, therefore, the district court did not have subject matter jurisdiction) (citing Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990) (district court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations); see also Sullivan v. Xu, 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug. 13, 2010) (no jurisdiction over the plaintiff's challenges to child custody and child support orders).

 *3  Accordingly, because Plaintiff challenges the underlying, on-going State Court matrimonial and child support enforcement action, the Court lacks subject matter jurisdiction under the domestic relations exception to this Court's jurisdiction. The Complaint is thus DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3).

### III. Younger Abstention also Precludes this Court from Exercising Jurisdiction

Plaintiff seeks declaratory and injunctive relief that would cause this Court to intervene in Plaintiff's ongoing state-court divorce and child support proceedings. Under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and its progeny, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court, in Sprint Communications, Inc. v. Jacobs, clarified that district courts should abstain from exercising jurisdiction only in three "exceptional circumstances." 571 U.S. 69, 78, 134 S. Ct. 584, 591, 187 L. Ed. 2d 505 (2013). These involve: "(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty., 805 F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Comm'cns, Inc., 571 U.S. at 73, 134 S. Ct. 588). The Supreme Court explained that "these three 'exceptional' categories ... define Younger's scope." Sprint Comm'cns, Inc., 571 U.S. at 78, 134 S. Ct. at 591.

Here, Younger and Sprint Comm'cns, Inc.'s require this Court to abstain. Plaintiff's federal Complaint "implicates the way that New York courts manage their own divorce and custody proceedings--a subject in which 'the states have an especially strong interest.' " Falco, 805 F.3d at 427 (quoting Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973)). Additionally, New York has an important interest in the accurate and bias-free functioning of its judicial system. See, e.g., Pennzoil v. Texaco, Inc., 481 U.S. 1, 12–14, 107 S. Ct. 1519, 1526–28, 95 L. Ed. 2d 1 (1987) (state interest in regulating judicial procedures); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982) (state interest in functioning of judicial system). Accordingly, this Court abstains under Younger from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and "implicat[ing] a State's interest in enforcing the orders and judgments of its courts." Sprint Comm'ns, Inc., 571 U.S. at 72-73, 134 S. Ct. at 588. Therefore, Plaintiff's claims for injunctive and/or declaratory relief are DISMISSED WITHOUT PREJUDICE on Younger abstention grounds as well. [1]

[1]    Notably, insofar as Plaintiff seeks to challenge the judgment of contempt entered against him for failing to pay child support, such claims fall squarely within the scope of abstention. See, e.g., Juidice v. Vail, 430 U.S. 327, 339, 97 S. Ct. 1211, 1219, 51 L. Ed. 2d 376 (1977) (holding that Younger required the district court to abstain in an action that sought to challenge the statutory contempt procedures in New York); see also Heck v. Humphrey, 512 U.S. 477, 486, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). Moreover, New York courts provide process for individuals who wish to challenge their contempt proceedings. See N.Y. C.P.L.R. § 7001; People ex rel. Foote v. Lorey, 28 A.D.3d 917, 918, 813 N.Y.S.2d 798 (3d Dept. 2006) (addressing a petition for a writ of habeas corpus filed pursuant to N.Y. C.P.L. Article 70 challenging a family court order of contempt). Thus, Plaintiff has an adequate avenue for review of the contempt order in state court.

### IV. The Rooker-Feldman Doctrine also bars Plaintiff's Claims

 *4  Even if Plaintiff's Complaint was not barred by the domestic relations exception and/or Younger abstention, the Rooker-Feldman doctrine precludes review of Plaintiff's claims in this Court. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 62 of 129

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-17, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923), the Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments. "Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state court decisions." Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks and citation omitted).

There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his [or her] complaint in the form of a civil rights action." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citations omitted). In addition, a plaintiff cannot circumvent Rooker-Feldman's bar by recasting his claims as civil rights violations or as RICO claims. Davidson v. Garry, 956 F. Supp. 265, 269 (E.D.N.Y. 1996)

Here, Plaintiff's allegations seek to collaterally attack the state court's orders against him relating to child support and visitation with his children. Plaintiff who has lost in state court and who now complains of injuries caused by the state court, invites this Court to review and reject the state court orders, all of which were issued before Plaintiff filed his Complaint in this Court on May 10, 2019. In broad terms, Plaintiff claims that an overarching racketeering enterprise tainted the state court action, and those involved conspired to, among other things, imprison Plaintiff for failing to pay his court-ordered child support and maintenance obligations. Plaintiff's claims here hinge on his allegations of unlawful conduct in the underlying state court action, and invite this Court to review and reject such conduct. Thus, because all the Rooker-Feldman requirements are satisfied, the Court lacks jurisdiction to adjudicate Plaintiff's claims. Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(h)(3) on the additional ground that the Rooker-Feldman doctrine divests this Court of jurisdiction. [2]

2    Given that this Court lacks subject matter jurisdiction, it need not address Plaintiff's Section 1983, 1985, and 1986 claims. However, because a Section 1983 claim requires a plaintiff to "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States", Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (internal quotation marks and citation omitted), his Section 1983 claims would fail as a matter of law because Lippman, Tomczyk, and Friedman are not state actors and Plaintiff has not alleged a plausible conspiracy claim. Similarly, Plaintiff's Section 1985 and 1986 claims would also fail. Section 1985 requires: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013) (internal quotation marks and citation omitted); see also 42 U.S.C. § 1985(2)-(3). A claim for conspiracy under Section 1985 "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Robinson, 508 F. App'x at 9 (internal quotation marks and citation omitted). Because Plaintiff does not allege he is a member of a protected class or that he was a victim of class-based, invidiously discriminatory animus, his Section 1985 claim is implausible. A Section 1986 claim is premised upon the validity of a claim under Section 1985. Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (dismissing Section 1986 claims because they are contingent upon valid Section 1985 claims). Accordingly, Plaintiff's Section 1986 claim is implausible. Asensio v. Roberts, 19-CV-3384, 2019 WL 1877386, *3 n.2 (S.D.N.Y Apr. 26, 2019) ("And, if Plaintiff cannot allege sufficient facts to state a § 1985 claim, he cannot state a related claim under 42 U.S.C. § 1986.").

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

V. Immunity Also Bars Plaintiff's Claims

A. The Eleventh Amendment

 **\*5** The Eleventh Amendment bars suits brought by a state's own citizens in federal court. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Alden v. Maine, 527 U.S. 706, 712, 119 S. Ct. 2240, 2246, 144 L. Ed. 2d 636 (1999)). It is well-established that, as an agency or arm of the State of New York, the New York Unified Court System, the Office of Court Administration, and the 10th Judicial District, are immune from suit under the Eleventh Amendment. Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) ("[T]he New York State Unified Court System is an arm of the State ..., and is therefore protected by Eleventh Amendment sovereign immunity"); Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 734 (S.D.N.Y. 2011), aff'd sub nom., Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. 2014). The Supreme Court instructs that the Eleventh Amendment gives a state government immunity from suit, not just from liability. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 144, 113 S. Ct. 684, 687, 121 L. Ed. 2d 605 (1993) (citation omitted).

In addition, insofar as Plaintiff seeks to recover a monetary award against Justice Leis, Mari (the Court-appointed law guardian for the children), and the unnamed State Defendants in their official capacities, they are immune from suit under the Eleventh Amendment. Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-08, 79 L. Ed. 2d 67 (1984). Because Section 1983 does not operate as a waiver of New York's Eleventh Amendment immunity and New York has not consented to such suits in federal Court, Walter v. Queens College, 18-CV-3060, 2019 WL 2342700, \*4 (E.D.N.Y. June 3, 2019) ("Congress did not waive the states' Eleventh Amendment immunity from suit when it enacted Section 1983"), Plaintiff's claims against the State of New York, the New York Unified Court System, the Office of Court Administration, the 10th District, Justice Leis, Mari, and the unnamed State Defendants in their official capacities are barred by the Eleventh Amendment and are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. See, e.g., Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, 116 S. Ct. 1114, 1121, 134 L. Ed. 2d 252 (1996) (a claim that is barred by a state's sovereign immunity is properly dismissed under the Eleventh Amendment for a lack of subject matter jurisdiction).

B. Absolute Judicial Immunity

Further, to the extent that Plaintiff seeks prospective injunctive relief from Justice Leis in his official capacity (which is not barred by the Eleventh Amendment) such claims are barred by absolute judicial immunity. It is well-established that judges have absolute judicial immunity from suit for their judicial actions. Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."). This absolute "judicial immunity is not overcome by allegations of bad faith or malice" nor can a judicial officer be deprived of immunity "because the action he took was in error or was in excess of his authority." Mireles, 502 U.S. at 11, 13, 112 S. Ct. at 288 (internal quotation marks and citations omitted; ellipsis omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Id. at 11–12, 112 S. Ct. at 288.

Here, Plaintiff complains of conduct allegedly performed by Justice Leis while presiding over the underlying state court proceeding. There is nothing in the Complaint from which the Court could reasonably construe that any alleged misconduct occurred outside of that capacity or that Justice Leis lacked jurisdiction over the proceedings. Thus, as is readily apparent, Justice Leis is entitled to absolute judicial immunity. Plaintiff may seek to appeal the adverse ruling he seeks to challenge here within the state court system, but he may not subject Justice Leis to personal liability in this Court. Accordingly, Plaintiff's claims against Justice Leis are DISMISSED. [3]

[3]    Plaintiff's RICO claims would also fail. To bring a RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983) quoting 18 U.S.C. § 1962. As is readily apparent, the Complaint is silent, for example, as to how Defendants' activities in the underlying matrimonial and child support enforcement action in Suffolk County affected interstate or foreign commerce.

Tomczyk v. New York Unified Court System, Not Reported in Fed. Supp. (2019)

2019 WL 2437849, RICO Bus.Disp.Guide 13,190

## VI. The All Writs Act

**\*6** Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir. 1999). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. See Malley v. N.Y. City Bd. of Educ., 112 F.3d 69 (2d Cir. 1997) (per curiam) (filing injunction may issue if numerous complaints filed are based on the same events); In re Martin-Trigona, 9 F.3d 226, 227-28 (2d Cir. 1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

The instant Complaint is Plaintiff's second attempt to bring his on-going divorce and child support enforcement action pending in the New York State Supreme Court, Suffolk County, to this Court. Plaintiff is cautioned that this Court will not tolerate frivolous filings. The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). The Court is especially cognizant of Plaintiff's pro se status and has considered his submissions in as positive a light as possible. Nonetheless, the Court now warns Plaintiff that similar, future attempts to bring his divorce and/or child support enforcement action to this Court or any new complaint concerning the same subject matter as set forth in the instant Complaint will not be tolerated. Should Plaintiff continue in this course of action, the Court will order Plaintiff to show cause why an order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court should not be entered.

Finally, Plaintiff is cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, see Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants ..."), and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him. See FED. R. CIV. P. 11; In re Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"); Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986) (" 'A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.' ") (quoting Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam)).

## CONCLUSION

For the reasons set forth above, the Complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction. Plaintiff's claims are barred by Younger abstention, the Domestic Relations exemption, the Rooker-Feldman doctrine, and immunity. Plaintiff is warned that similar, future complaints will not be tolerated. If Plaintiff persists in this course of conduct, the Court may issue an Order prohibiting Plaintiff from filing any future lawsuit relating to the State Case without first obtaining leave of Court after affording Plaintiff notice and an opportunity to be heard. Plaintiff is also cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants, and should he file another action relating to the State Case, it is within the Court's authority to consider imposing sanctions upon him.

**\*7** Although Plaintiff paid the filing fee in this Court, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore, should Plaintiff seek leave to appeal in forma pauperis, such status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2437849, RICO Bus.Disp.Guide 13,190

---

2019 WL 5150196
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,

v.

Honorable Cecily L. MORRIS, Judge, New York State
Family Court: County of St. Lawrence, Defendant.

Civ. No. 8:19-CV-97 (BKS/DJS)
|
Signed 04/10/2019

**Attorneys and Law Firms**

ROBERT G. BOWMAN, Plaintiff, Pro Se, 104 Prospect
Street, Gouverneur, NY 13642.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by
Plaintiff Robert Bowman. Dkt. No. 1, Compl. Plaintiff has not
paid the filing fee, but instead submitted a Motion to Proceed
*in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate
Order, this Court granted Plaintiff's Application to Proceed
IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court
will *sua sponte* review the sufficiency of the Complaint.

**I. INTRODUCTION**

The following facts are drawn from the *pro se* Complaint
as well as the third Department decision of *St. Lawrence
Cty. Support Collection Unit ex rel. Bowman v. Bowman*, 152
A.D.3d 899 (N.Y. App. Div.), *appeal dismissed sub nom. St.
Lawrence Cty. Support Collection Unit v. Bowman*, 30 N.Y.3d
1032 (2017), which is referred to and specifically referenced
in the Complaint. [1] *See* Compl. at ¶¶ 32-35. Plaintiff is the
subject of a St. Lawrence County Family Court order of child
support. Compl. at ¶¶ 15-24; *Bowman*, 152 A.D. 3d at 899. At
issue in this proposed federal action is a 2003 Family Court
consent order regarding child support, a December 2007
consent order, and a November 2011 modification order. *Id.*
Further, in 2015, Plaintiff's ex-wife, through the St. Lawrence
County Support Collection Unit, commenced a proceeding
in state court alleging that Plaintiff willfully failed to make

payments required by the November 2011 order. *Id.* As a
result of that action, a money judgment was entered against
Plaintiff. *Id.*

[1]    The Court therefore takes judicial notice of the
      Family Court orders and decisions referenced in
      the Complaint. *Trombley v. O'Neill*, 929 F. Supp.
      2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice
      of custody order of the Family Court); *Villanueva
      v. City of New York*, 2010 WL 1654162, at \*5
      (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court
      orders and hearing transcripts from the underlying
      Family Court proceedings....").

In March 2016, Plaintiff filed an *ex parte* motion to show
cause in St. Lawrence Family Court asking the court to vacate
the 2003, 2007, and 2011 support orders. *Id.* The Family Court
denied Plaintiff's motion on timeliness grounds, as well as
his failure to establish a reasonable excuse for his default.
*Id.* Plaintiff appealed that denial to the Appellate Division,
Third Judicial Department. The Third Department rejected
Plaintiff's appeal upon the grounds that an appeal of an *ex
parte* motion to issue an order to show cause is not available
as of right, and that Plaintiff failed to provide an argument for
relief on the merits pursuant to CPLR 5704(a). *Bowman*, 152
A.D.3d at 899. Thereafter, the Court of Appeals dismissed
Plaintiff's appeal to that Court, noting that the order appealed
from does not finally determine the proceedings within the
meaning of the Constitution. *Bowman*, 30 N.Y. 3d 1032.
Having failed at all levels of state court review, Plaintiff now
commences this action pursuant to 42 U.S.C. § 1983. While
the Complaint specifically asks for declaratory and injunctive
relief, it is clear that the primary focus of what Plaintiff seeks
is an invalidation of the previously issued support orders. *See*
Compl. at ¶ 46 ("As a direct and approximate (sic) result
of Defendant['s] violation of plaintiff's federal right under
42 USC 667(b)(2), plaintiff has suffered severe ... financial
injuries.").

**II. DISCUSSION**

**\*2** Section 1915(e) of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed *in forma
pauperis*, "the court shall dismiss the case at any time if the
court determines that ... the action or appeal (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may
be granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 66 of 129

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

2019 WL 5150196

Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). However, where the grounds for

dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

## A. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at *3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

**\*3** In the present case, Plaintiff cites to a violation of federal statutory and constitutional law relating to child support awards, and seeks redress under the Civil Rights Statute, 42 U.S.C. § 1983. The jurisdictional issues in this case are therefore multifaceted. Does the federal statute at issue create rights enforceable under section 1983? Does the First Amendment right of access cause of action state a claim? Even if the answer to either of these questions is yes, are there exceptions to the Court's jurisdiction which preclude the Court from assuming jurisdiction over the claims?

## B. The Proposed Laws Action

42 U.S.C. § 1983 makes actionable not only constitutional violations but also violations of those rights secured by the "laws." However, not every violation of a federal law is enforceable under section 1983, and it is incumbent upon a prospective 1983 plaintiff to assert a violation of a federal "right" and not simply that he or she benefits from the federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The Supreme Court's most recent laws decision emphasizes that, to be enforceable by a private plaintiff under section 1983, the statute must establish an "unambiguously conferred right."

2019 WL 5150196

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (holding that the Federal Education Rights Privacy Act did not support a section 1983 claim as the provisions of the statute relied upon "contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the ... distribution of public funds....").

The Supreme Court has provided specific guidance regarding the federal statute at issue in the present lawsuit, Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b. In *Blessing*, five mothers due child support payments brought a section 1983 suit claiming that they had a right to have the State of Arizona substantially comply with the federal mandate regarding its child-support enforcement programs, especially as it relates to support payments. *Blessing v. Freestone*, 520 U.S. at 333-34. The plaintiffs, in justifying their claim, relied upon the statute's provision that in the event that the State had not substantially complied with the dictates of the federal law, the Secretary of the Department of Health and Humans Services could reduce the federal grant to that particular state. *Id.* at 335; 42 U.S.C. § 609(a)(8); 45 C.F.R. § 305.20 (1995).

The Supreme Court agreed that the plaintiffs in the action benefitted from the federal statute, and further, that Arizona's efforts under the statute were "less than stellar," but, nevertheless, it did not authorize a section 1983 claim based upon the facts presented. In reviewing the remedial scheme, the Supreme Court concluded:

> Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *systemwide* performance of the State's Title IV-D program. Thus, the Secretary must look to the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied.... Moreover, even upon a finding of substantial noncompliance, the Secretary can merely reduce the State's AFDC grant by up to five percent; she cannot, by force of her own authority, command the State to take any particular action or to provide any services to certain individuals.

> In short, the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent. As such, it does not give rise to individual rights. [2]

**\*4** *Blessing v. Freestone*, 520 U.S. at 343-44 (emphasis in the original).

[2]  While the Supreme Court in *Blessing* did not foreclose every section 1983 claim predicated upon Title IV-D, it emphasized that a potential plaintiff must identify a particularized portion of the statute and establish that it did in fact create individually enforceable rights. As an example, the Court highlighted the potential situation where the State did collect support payments but then failed to pass through a portion of the payment to the party entitled to it by § 657(b)(1) of the Act. *Id.* at 345-46.

In the present case, Plaintiff seeks to avoid the effect of a judgment for failure to pay child support, and to declare illegal the child support obligation identified by the Family Court. Plaintiff points to 42 U.S.C. § 667, "State guidelines for child support awards," and notes that it creates a rebuttable presumption that a support award should be within such guidelines. 42 U.S.C. § 667(b)(2). That Statute states in pertinent part, as follows:

**(a) Establishment of guidelines; method**

Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the state....

**(b) Availability of guidelines; rebuttable presumption**

**(2)** There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, *as determined under criteria established by the State*, shall be sufficient to rebut the presumption in that case.

2019 WL 5150196

*Id.* (emphasis added).

In his Complaint, Plaintiff does not allege that the State of New York did not create such guidelines, or that the support order applied to him does not in fact fall within those guidelines; indeed a careful reading of his Complaint confirms that it does. Compl. at ¶ 43 ("Plaintiff's[ ] application for the issuance of an order to show cause, was legally sufficient to overcome the presumptive child support award ..."). He maintains instead that the Family Court erred when it failed to accept his rebuttal argument[3] that the guidelines should not apply in his case upon the grounds that they are unjust or inappropriate. Compl. at ¶¶ 36-48.[4]

> [3]
> Plaintiff presented this argument by way of an *ex parte* order to show cause motion after a default judgment had already been entered.

> [4]
> Plaintiff also makes a state law claim that, under the Family Court Act, a cap of five hundred dollars should have been placed upon any child-support order based upon his financial condition. Compl. at ¶ 56 (citing Family Court Act § 413(1)(g)).

The Complaint, as it presently stands, is insufficient to confer jurisdiction upon the federal courts. The provisions of Title IV-D relied upon by Plaintiff do not create an individualized right to have a federal court review his support order. While the statute refers to the establishment of child support award guidelines, it makes clear that they are exactly that: guidelines to which exceptions can be made. The statute does indicate that in the event that the state were to apply an award outside the presumptive guidelines, that it should set forth its reasons for doing so, relying upon guidelines to be set by the state. 42 U.S.C. § 667(b)(2). The statute says nothing more, and certainly provides no guidance for federal courts to calculate a below-guideline support order. In other words, the statutory provision sets forth general standards concerning support award guidelines applicable to the states, but it does not create individualized federal rights. At no point does the statute state, or even intimate, that an affected parent has a claim in federal court based upon that parent's belief that a particular state child support order is in error. *De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 254 (D.P.R. 2013) ("Here, the statute does not contain any rights-creating language or focus on individuals. Rather, the statute simply imposes a requirement on states to periodically review their child support guidelines. *See* § 667. Therefore, no private right of action is available to Plaintiffs to enforce § 667 by way of § 1983."); *see also*

*Jones v. State*, 2014 WL 4630933, at *1 (W.D. Mo. Sept. 16, 2014) ("[T]he Family Support Act of 1988, Pub.L. 100-485, required the states to enact mandatory, or presumptively correct, guidelines for awards of child support in order to continue to participate in the federal Aid to Families with Dependent Children Program; and to operate child support enforcement programs. The Act makes no provision for suit by private parties in federal court.").

*5 Accepting Plaintiff's argument that federal courts should utilize this statute to confer jurisdiction and decide child support orders would violate nearly all the traditional "rights-creating" requirements identified by the Supreme Court. As noted above, there is no indication that the statute itself was intended to benefit Plaintiff in particular. *Cuvillier v. Taylor*, 503 F.3d 397, 406 (5th Cir. 2007) (construing the child support provisions of Title IV-D, and noting that "individuals may be beneficiaries even though Congress did not confer a right on them."). The statute itself does not establish individual rights with sufficient specificity so that they are capable of enforcement by the federal courts. *Blessing v. Freestone*, 520 U.S. at 340-41. That a particular parent may rebut the projected support guidelines by a standard that is left to be developed by the states, certainly falls under the category of "vague and amorphous." *Id.* Further, the enforcement statute provided for in the support section of Title IV-D is limited to lawsuits by states, and only where there has been preapproval by the Secretary of Health and Human Services. 42 U.S.C. §§ 652(a)(8) & 660.

Accordingly, the Complaint as presently pled does not identify a particular right created by a federal statute enforceable under section 1983, and therefore it should be dismissed at this initial stage. However, even if an enforceable federal right were identified, this case runs afoul of other exceptions to federal court jurisdiction.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court

2019 WL 5150196

has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, as the present *pro se* Complaint seeks to overturn a child support decision of the St. Lawrence County Family Court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017); *see also McArthur v. Bell*, 788 F. Supp. 706, 708-09 (E.D.N.Y. 1992) ("[T]o decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings.... That is not the role of this Court.").

### 2. The Rooker-Feldman Doctrine

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine "divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Here, Plaintiff is challenging the support judgment entered against him, and therefore all four elements of *Rooker-Feldman* are present in this case, and the matter should be dismissed. *Fernandez*

*v. Turetsky*, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 Fed. Appx. 103 (2d Cir. 2016) ("Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases); *see also Dinsio v. Appellate Div., Third Dep't*, 2017 WL 3016832, at *10-12 (N.D.N.Y. July 14, 2017), *reconsideration denied*, 2018 WL 1156005 (N.D.N.Y. Mar. 5, 2018).

### 3. Younger Abstention

**\*6** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal prosecutions"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id. at 79* (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (summary order) (same). In this case Plaintiff specifically seeks injunctive relief "restraining the Defendant ... from any further violations of Title IV-D." Compl. at ¶ 68(7). Such relief would make little sense, or be moot, if proceedings were not ongoing in Family Court. Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### C. Plaintiff's First Amendment Right of Access Claim

Plaintiff's Second Cause of Action, also seeking declaratory relief, alleges that Plaintiff's inability to challenge, in Family Court, the presumptive child support award calculated under

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 70 of 129

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

2019 WL 5150196

New York States' child support guidelines, violates his First Amendment right of access to the courts. Compl. at ¶¶ 49-67. The Supreme Court has generally recognized this type of claim. *See Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971) ("... the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process."). As the Supreme Court has further articulated, however, a backward-looking right of access claim generally alleges that official action is presently denying the plaintiff the opportunity to litigate his case, and seeks to remove that frustrating condition. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). Of course, due process is not necessarily violated every time a defendant in a civil case does not have a merits hearing. The Supreme Court has noted as an example that this may occur where a defendant does not timely respond and a default is entered. *Boddie v. Connecticut*, 401 U.S. at 375-78.

In the present case it is difficult to discern exactly what Plaintiff's right of access claim really is, and as such Plaintiff's second cause of action fails to state a claim. In the event that Plaintiff is resting his claim upon the rebuttable presumption set forth in 42 U.S.C. § 667(b)(2), as noted *supra*, there are no actionable individual federal rights that flow from that statute. Plaintiff cannot simply resurrect a faulty "laws" action by construing it as a right of access claim.

While the Court would normally allow Plaintiff an opportunity to replead a cause of action that fails to state a claim, any such right of access claim would also run contrary to the jurisdictional limitations previously detailed in this opinion, including the domestic relations exception and the *Rooker-Feldman* doctrine. *See Kneitel v. Palos*, 2015 WL 3607570, at *4-5 (E.D.N.Y. June 8, 2015) ("However characterized, Plaintiff's claims fundamentally challenge state court child support orders."). In addition, to the extent Plaintiff seeks to use this claim to essentially appeal unfavorable determinations in state court, "[d]istrict courts 'do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,' and '[r]eview of those decisions may be had only' in the Supreme Court of the United States." *Cassidy v. Madoff*, 2018 WL 5792786, at *5 (N.D.N.Y. Nov. 5, 2018) (quoting *D.C. Court of Appeals v.*

*Feldman*, 460 U.S. 462, 486 (1983)). Therefore, Plaintiff's second cause of action should be dismissed.

### D. Plaintiff's State Law Claims

**\*7** Plaintiff attempts, possibly, to assert state law claims against Judge Morris based upon alleged violations of the New York State Family Court Act and the Domestic Relations Law. Compl. at ¶¶ 56-59. In light of the recommendation that all of Plaintiff's federal claims against Judge Morris be dismissed, the Court also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law and state constitutional claims, without prejudice, subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's federal claims. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Medina v. Cuomo*, 2015 WL 13744627, at *15 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016).

### III. CONCLUSION

Plaintiff requests that the federal court review his state court support award in light of his particular financial condition and conclude that the Family Court judge's determination was in error. This it should not, and cannot, do. Plaintiff points to the federal statute regarding guidelines for child support, but that statute creates no individually enforceable rights. Plaintiff's First Amendment access to the courts claim is factually and legally defective. Having considered the viability of the Complaint under the applicable standard of review, the Court has concluded that Plaintiff fails to state a claim upon which relief could be granted and that the Court lacks jurisdiction to hear the matter. As such, his entire Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

In light of his *pro se* status, the Court would typically, prior to outright dismissal, afford Plaintiff the opportunity to amend his Complaint in order to state cognizable claims. However, upon completing my review of the Complaint, I determine that any such amendment of any federal claims over which the Court would have jurisdiction would be futile in light of the facts presented and the legal obstacles outlined above. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be

2019 WL 5150196

futile. Such a futile request to replead should be denied.");
*Davis v. Kushner*, 2014 WL 5308142, at *4 (N.D.N.Y. Oct. 16, 2014) ("[T]he domestic relations exception bars this Court from exercising its jurisdiction over the instant action. Furthermore, granting [Plaintiff] an opportunity to amend his complaint would be futile because from the face of the complaint, the Court lacks subject matter jurisdiction.").

Thus, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the entire Complaint be **dismissed**, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[5]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5150196

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3759174
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert G. BOWMAN, Plaintiff,

v.

Honorable Cecily L. MORRIS, Judge-New York State
Family Court for the County of St. Lawrence, Defendant.

8:19-cv-00097 (BKS/DJS)
|
Signed 08/09/2019

**Attorneys and Law Firms**

Plaintiff pro se: Robert G. Bowman, Gouverneur, New York.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 *1  On January 24, 2019, Plaintiff pro se Robert G. Bowman filed this action for declaratory and injunctive relief naming Honorable Cecily L. Morris, a judge in St. Lawrence County Family Court, as a defendant. (Dkt. No. 1). This matter was referred to United States Magistrate Judge Daniel J. Stewart, who, on April 10, 2019, issued a Report-Recommendation recommending, among other things, that the Complaint be dismissed because the Court lacks subject-matter jurisdiction. (Dkt. No. 7). Magistrate Judge Stewart concluded that: the Complaint does not identify a federal statutory right enforceable under 42 U.S.C. § 1983; in any event, under the *Rooker-Feldman* doctrine and the domestic-relations exception to federal subject-matter jurisdiction, this Court does not have jurisdiction to consider Plaintiff's challenge to the St. Lawrence County Family Court orders; and the *Younger* abstention doctrine prevents this Court from interfering with any ongoing proceedings in St. Lawrence County Family Court. (Dkt. 7, at 5-14). Plaintiff has filed an objection to Magistrate Judge Stewart's determination that this Court lacks jurisdiction. (Dkt. No. 9). For the reasons set forth below, the Report-Recommendation of dismissal for lack of subject-matter jurisdiction is adopted and the Complaint is dismissed.

**II. STANDARD OF REVIEW**

This court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012). Findings and recommendations for which there was no properly preserved objection are reviewed for clear error. *Id.*

**III. DISCUSSION**

Plaintiff filed this Complaint "seek[ing] to enforce" 42 U.S.C. § 667(b)(2), which allegedly entitles him to the "opportunity to rebut the presumptive child support award" that Plaintiff was ordered to pay. (Dkt. No. 1, at 1). Plaintiff alleges that § 667(b)(2) "confers a personal right upon the plaintiff that is enforceable under [42 U.S.C.] § 1983. (*Id.*). Plaintiff has identified two orders of the St. Lawrence County Family Court ("Family Court"), filed in 2003 and 2007, that he claims should be modified or vacated. (*Id.* at 3). On March 16, 2016, Plaintiff submitted an application to show cause in Family Court, seeking to "modify, terminate, and vacate those parts of the child support order plaintiff was no longer legally obligated to pay," but Defendant Judge Morris denied his application. (*Id.* at 1–2). Plaintiff filed a motion to reargue and renew, which the Family Court denied, and an appeal to the New York Supreme Court's Appellate Division, Third Department, which was dismissed. (*Id.* at 4–6). *St. Lawrence County Support Collection Unit ex rel. Bowman v. Bowman*, 152 A.D. 3d 899, 899–900 (3d Dep't 2017), *appeal dismissed*, 30 N.Y.3d 1032 (2017). [1] In this action Plaintiff seeks, among other things, a declaration that Judge Morris's conduct violates 42 U.S.C. § 667(b)(2) and "plaintiff's right of access to the courts guaranteed by the First Amendment," as well as an injunction restraining Judge Morris from any further violations of § 667(b)(2).

[1]     In its recitation of the facts, the Third Department noted that the Family Court "declined to issue the order to show cause, finding that [Plaintiff] failed to file timely written objections to the three [child support] orders ... and, as to the money judgment, [Plaintiff] failed to establish a reasonable excuse for his default." *Bowman*, 152 A.D. 3d at 899.

 *2  In a thorough Report-Recommendation, Magistrate Judge Stewart concluded that § 667(b)(2) does not create a right that is enforceable under § 1983 and that, even if there were an enforceable federal right, under the *Rooker-Feldman* doctrine and the domestic-relations exception to federal subject matter jurisdiction, this Court does not have

Bowman v. Morris, Not Reported in Fed. Supp. (2019)

2019 WL 3759174

jurisdiction to consider Plaintiff's claims. Further, Magistrate Judge Stewart determined that, under the *Younger* abstention doctrine, the Court must abstain from exercising jurisdiction to interfere with any ongoing proceedings in Family Court. Magistrate Judge Stewart thus concluded, *inter alia*, that the Court lacks subject-matter jurisdiction and the Complaint should be dismissed.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that the Complaint is insufficient to confer jurisdiction. (Dkt. No. 9). Plaintiff himself describes his Complaint as a challenge to "the Family Courts refusal to allow the plaintiff an opportunity to rebut the presumptive child support award contained in [the 2003, 2007 and 2011] child support orders as is mandated by 42 U.S.C. 667[(b) (2)]." (Dkt. No. 9, at 3). For the reasons explained by Magistrate Judge Stewart, the domestic-relations exception and the *Rooker-Feldman* doctrine divest this Court of jurisdiction to consider that challenge. (Dkt. No. 7, at 11–13). Plaintiff argues that *Rooker-Feldman* does not preclude a § 1983 action, citing *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014). But *Teichmann* does not provide any support for subject-matter jurisdiction here. In *Teichmann*, the Second Circuit affirmed the dismissal of a § 1983 action for failure to state a claim because the defendant prosecutor and other state officials had absolute immunity. Since the plaintiff was seeking to vacate his conviction, the Second Circuit noted that its decision found "additional support in the principle that animates the *Rooker-Feldman* doctrine: namely that federal district courts do not have authority to review the judgments of state courts." *Teichmann*, 769 F.3d at 826. Plaintiff relies on the Court's subsequent statement: that *Rooker-Feldman* "does not preclude a § 1983 action or a hypothetical direct constitutional tort action, against a state official who violates a plaintiff's constitutional rights." *Id.* Indeed, as the Second Circuit later noted, only those § 1983 plaintiffs who "complain of an injury caused by a state judgment" are subject to the *Rooker-Feldman* bar. *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007). Here, because Plaintiff's complaint seeks review and rejection of a state

court judgment—i.e., a declaration that Judge Morris's orders violated the First Amendment and § 667(b)(2)—his claims are barred by *Rooker-Feldman*.

Plaintiff argues that Magistrate Judge Stewart erred in concluding that § 667(b)(2) does not provide a personal federal right enforceable under 42 U.S.C. § 1983. But the Court need not consider whether Plaintiff has raised a colorable federal claim under § 1983 for the purposes of subject-matter jurisdiction because, regardless of whether § 667(b)(2) creates a personal right enforceable under § 1983, the *Rooker-Feldman* doctrine and the domestic-relations exception divest this Court of jurisdiction to consider Plaintiff's challenge to Judge Morris's decisions. The Court therefore adopts Magistrate Judge Stewart's recommendation that this action be dismissed for lack of subject-matter jurisdiction.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 7) recommending that this action be dismissed for lack of subject-matter jurisdiction is **ADOPTED**; and it is further

 **\*3  ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice for lack of subject-matter jurisdiction; and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2019 WL 3759174

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1142144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John A. PORTER, III, Plaintiff,

v.

Susan Hamlin NASCI, Defendant.

5:24-CV-0033 (GTS/TWD)
|
Signed March 15, 2024

**Attorneys and Law Firms**

JOHN A. PORTER, III, 175 Parkside Ave, Syracuse, NY 13207, Plaintiff, pro se.

## ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

*\*1* The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") filed by Plaintiff John A. Porter, III, to the Court for review. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 alleging Defendant Susan Hamlin Nasci, "acting as a non-judicial court employee without proper authority and jurisdiction," violated his "constitutional rights." [1] *Id.* Plaintiff claims "Defendant's actions constitute a violation of the Plaintiff's right to a trial by jury, equal protection of the law, and due process, resulting in substantial emotional and financial harm to the Plaintiff." [2] *Id.* The complaint does not include any other factual allegations.

[1]    The Court takes judicial notice Susan Hamlin Nasci, Esq., is a New York Family Court Support Magistrate. *See* https://ww2.nycourts.gov/courts/5jd/onondaga/index.shtml (last visited Mar. 13, 2024).

[2]    Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in

the original and errors in spelling, punctuation, and grammar have not been corrected.

As relief, Plaintiff seeks: (1) $50,000 in actual damages "for medical conditions and lost income due to severe anxiety and reduced work capacity"; (2) $50,000 in compensatory damages for emotional distress "caused by the estrangement from the Plaintiff's son"; (3) $50,000 in punitive damages to "penalize the Defendant and deter similar future misconduct"; (4) "the immediate dismissal" of the "fraudulent child support financial order imposed upon the Plaintiff"; and (5) the "return of all payments made by the Plaintiff under the fraudulent child support order up to the present day." *Id.* at 2.

## II. IFP APPLICATION

Plaintiff declares in his IFP application that he is unable to pay the statutory filing fee to commence this action. (Dkt. No. 2.) After reviewing his application, this Court finds Plaintiff is financially eligible for IFP status. According, Plaintiff's IFP application is granted. [3]

[3]    Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

## III. STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion thereof, if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

**\*2** To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." Id. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555; see also Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Court will construe the allegations in the complaint with the utmost leniency. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

**IV. ANALYSIS**
Liberally construed, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) ("42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").[4]

[4]    Plaintiff also claims Defendant, "acting as a non-judicial court employee without proper

authority and jurisdiction, has trespassed upon the Plaintiff's right, specifically under 18 USC Section 242." (Dkt. No. 1 at 1.) However, 18 U.S.C. § 242 is a criminal statute, which does not give rise to civil liability or authorize a private right of action. See Storm-Eggink v. Gottfried, 409 F. App'x 426, 427 (2d Cir. 2011) (holding there is "no private right of action" under 18 U.S.C. § 242).

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the Court recommends dismissal of complaint without prejudice and with leave to amend.

**A. Failure to State a Claim**
The complaint alleges Defendant denied Plaintiff his "right to a trial by jury, equal protection of the law, and due process." (Dkt. No. 1 at 1.) However, Plaintiff has failed to adequately set forth sufficient factual content to allow this Court to reasonably infer Defendant was personally involved and liable for the alleged unconstitutional conduct. See Iqbal, 556 U.S. at 678. Specifically, he has failed to set forth a short and plain statement stating what Defendant did to him, when she did it, and how he was injured. See id.; see also Fed. R. Civ. P. 8(a)(2). Absent these basic details, Plaintiff's complaint has failed to give Defendant fair notice of what his claims are, and the Court is left with "an unadorned, the-defendant-harmed-me accusation." See Iqbal, 556 U.S. at 678.

**\*3** Therefore, it is recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a).

**B. Judicial Immunity**
Judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. Mireles v. Waco, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or

malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action "outside" his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

"New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings." [5] *Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024) (citing *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order)); *see, e.g., Phillips v. Wagner*, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092, at *4 (N.D.N.Y. Nov. 4, 2022) ("Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity."), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

[5]     According to the website maintained by the New York State Unified Court System, "[a] 'Support Magistrate' conducts the hearing, taking testimony from both sides concerning their income and expenses and the cost of supporting the child. The parties can present evidence and witnesses and cross-examine each other and the witnesses. The Support Magistrate calculates how much support the non-custodial parent must pay to the parent with custody, and sets a schedule for regular payments." *See* https://ww2.nycourts.gov/courts/5jd/family/support.shtml (last visited Mar. 13, 2024).

While not entirely clear, Plaintiff seems to assert claims for damages and injunctive relief pursuant to Section 1983

against Defendant, a Support Magistrate, who presumably presided over the child support proceedings that resulted in the alleged "fraudulent child support financial order imposed upon the Plaintiff." (Dkt. No. 1 at 1-2.) Plaintiff, however, fails to allege any facts showing Defendant acted beyond the scope of her judicial responsibilities or outside her jurisdiction. *See Mireles*, 509 U.S. at 11-12. Moreover, Plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable.

**\*4** Thus, insofar as Plaintiff sues Defendant "for acts arising out of, or related to, individual cases before [her]," Defendant would be entitled to judicial immunity. [6] *Bliven*, 579 F.3d at 210; *see* 28 U.S.C. § 1915(e)(2)(b)(iii); *see also Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

[6]     Defendant also would be protected under the doctrine of sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). That holding was recently reaffirmed by the Second Circuit. *Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("The New York State Unified Court System is 'unquestionably an arm of the state' that shares in New York's immunity to suit.").

### C. Jurisdiction

Although the nature of Plaintiff's complaint makes it difficult to precisely determine which doctrines apply, based on the relief Plaintiff seeks, this Court may lack jurisdiction to hear Plaintiff's claims and/or it should likely abstain from hearing Plaintiff's claims.

Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with

2024 WL 1142144

jurisdiction over such cases." (citing 28 U.S.C. § 1257)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Sims v. Kaufman*, No. 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing *Legister v. Radowitz*, No. 1:20-CV-9330, 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020)) ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted). [7]

[7]    To the extent Plaintiff is asking the Court to grant injunctive and declaratory relief with respect to ongoing Family Court proceedings, including any post-judgment proceedings, the Court must likely abstain from hearing those claims under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

**\*5** Plaintiff's claims also appear to implicate the domestic relations abstention doctrine, which requires federal courts to abstain from exercising federal question jurisdiction of domestic relations issues such as divorce, child support payments and child custody. *See Deem v. DiMella-Deem*, 941 F.3d 618, 621-24 (2d Cir. 2019) (holding that federal district courts must abstain from exercising federal-question jurisdiction of claims involving domestic-relations issues); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that where a federal district court is "asked to grant a divorce or annulment, determine support payments, or award custody of a child," the court should abstain from exercising its jurisdiction of such claims if "there is no obstacle to their full and fair determination in [the] state courts.") (internal quotation marks omitted); *see, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[C]alculation of support payments is the type of

domestic relations issue that the Court generally abstains from hearing.").

## V. OPPORTUNITY TO AMEND

As discussed above, the Court finds Plaintiff's complaint is subject to dismissal failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 8(a). Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Although the Court has serious doubts about whether Plaintiff can amend to assert an actionable claim given the various jurisdictional and immunity principles discussed above, since this is Plaintiff's initial complaint and out of an abundance of caution, the Court recommends that Plaintiff be given an opportunity to amend to cure the deficiencies identified above.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. [8] Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff is cautioned that no portion of his original complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. Of course, Plaintiff may also pursue his claims in state court if appropriate.

[8]    "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

## VI. CONCLUSION
**WHEREFORE**, it is hereby

2024 WL 1142144

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. [9] **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[9]
If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**\*6  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1142144

---

**End of Document**                                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 757338
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Richard SIMS, Plaintiff,

v.

Rachelle C. KAUFMAN; Rachel
Tanguay AJSC, Defendants.

23-CV-7927 (LTS)
|
Signed February 14, 2024

**Attorneys and Law Firms**

Richard Sims, Birmingham, AL, Pro Se.

ORDER OF DISMISSAL WITH LEAVE TO REPLEAAD

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
under 42 U.S.C. § 1983, alleging that Defendants violated his
constitutional rights. By order dated September 26, 2023, the
Court granted Plaintiff's request to proceed *in forma pauperis*
("IFP"), that is, without prepayment of fees. For the following
reasons, the Court dismisses the complaint, with 30 days'
leave to replead.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it
does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Richard Sims, who resides in Alabama, brings this
complaint under the court's federal question jurisdiction,
claiming that Rockland County Family Court Judge Rachel
Kaufman, and Rockland Family Court Magistrate Rachel
Tanguay "stripped away" his constitutional rights during child
support proceedings. (ECF 1 ¶ I and page 8.) The following
facts are drawn from the complaint.

On August 3, 2018, Plaintiff was "supposed to have" a remote
child support hearing in his local court, but it did not happen,
because Judge Kaufman "didn't follow proper protocol by
sending the court the proper forms." (ECF 1 ¶ I.) Judge
Kaufman told Plaintiff that it was "[his] job to deal with [his]
courthouse. [He] put a court clerk one the phone so she could
explain the rules to [Kaufman] but she became disrespectful
and rude. So the clerk told [Plaintiff] to file a motion to get
another date granted." (*Id.*) Plaintiff asserts that Defendants
denied or "overlooked" all of his motions, and that he "never
had a fair day in court." (*Id.* ¶ III.) Judge Kaufman held
Plaintiff in default, denied him a paternity test, and "named
[him] the father for both children," although Plaintiff's name
is on only one of the birth certificates. (*Id.* at 8.)

**\*2** In April 2023, "JA," who appears to be the children's mother, "tried to collect funds from" Plaintiff in Alabama, but because he is "not on child support in the system," he had to hire a lawyer. A court attorney in Alabama told Plaintiff that "it's not fair how [he has] been treated"; that he "deserves a DNA test"; and that "if it was in her jurisdiction she would give [him] one." (*Id.* at 8.) Plaintiff asks that the Court "help [him] get [his] rights back." (*Id.*)

**DISCUSSION**

**A. Judicial immunity**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judges are also immune from civil rights claims for injunctive relief based on actions taken in their judicial capacities, "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "A court's control of its docket is ... a judicial act because it is part of a court's function of resolving disputes between parties." *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) "Even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when the judge takes action "outside" her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings. *See Acre v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at *5 (S.D.N.Y. Dec. 16, 2020); *Charles v. Lopez*, No. 19-CV-8706 (CM),

2019 WL 5261154, at *2 (S.D.N.Y. Oct. 15, 2019); *Roger of the Fam. Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting other district court cases within the Second Circuit).

Plaintiff alleges that his constitutional rights were violated because a remote hearing did not take place due to a technology problem; that he was found to be in default; that he was ordered to pay child support in the absence of a paternity test; and that he felt compelled to hire an attorney because the mother of his children made efforts to enforce the child support order in Alabama. Plaintiff, however, fails to allege any facts showing that, in presiding over Plaintiff's child support proceedings and issuing orders, Defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12.

Moreover, Plaintiff appears to seek injunctive relief, but he does not allege facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. Declaratory relief against a judge for actions taken within her judicial capacity is ordinarily available by appealing the judge's order. *See Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (dismissing Section 1983 claim for injunctive relief because declaratory relief was available through appeal in state court); *LeDuc v. Tilley*, No. 3:05-CV-0157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) (same). Here, the remedy that is available to Plaintiff is to appeal within the state court system, rather than filing an action in federal court. Plaintiff has alleged no facts suggesting that he was unable to appeal any decision made by Judge Kaufman or Judge Tanguay. Because Plaintiff has not alleged facts suggesting that either judge violated a declaratory decree or that declaratory relief was unavailable, Section 1983 precludes any award of injunctive relief against these defendants.

**B. The *Younger* doctrine**

**\*3** If Plaintiff's child support proceedings are pending in the New York Family Court, Bronx County, this Court may not intervene in them. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of the *Younger* abstention doctrine has been extended to the three

following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("*Sprint*"). Courts have held that pending state child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See Francis v. Dep't of Soc. Servs.*, No. 22-CV-6860 (DSS), 2023 WL 5096145, at *4 (E.D.N.Y. Aug. 9, 2023) ("The merits of that appeal – challenging both the Family Court order and Francis's need to exhaust administrative remedies through [the Department of Social Services] – implicate New York's state interest in managing and enforcing child support payments."); *Perso v. Perso*, No. 19-CV-2858 (JMA) (SIL), 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13, 2019) (same as to ongoing divorce and child support proceedings); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (same); *Bowman v. Morris*, No. 8:19-CV-0097 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) ("[T]o the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process."), *report & recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019); *Gravagna v. Eisenpress*, No. 19-CV-0700 (CM), 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019) ("[T]his Court must abstain under *Younger* from interfering in Plaintiff's ongoing state-court proceedings[ ] involving ... child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' " (citation and second alteration omitted)); *Brock v. City of New York*, No. 19-CV-0957 (BMC) (RML), 2019 WL 438356, at *3 (E.D.N.Y. Feb. 4, 2019) (applying *Younger* abstention to a claim in which the plaintiff asked the federal district court "to enjoin [a New York City official] from continuing to prosecute [the plaintiff's] child support obligations in New York family court" because "actions to enforce child support orders implicate important state interests").

Plaintiff has not alleged any facts showing bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect to his child support proceedings that may be pending in the New York Family Court, Bronx County. Thus, to the extent that Plaintiff asks this Court to intervene in those pending proceedings, the Court dismisses his claims under the *Younger* abstention doctrine. [1]

[1]   In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted). Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992); *see id.* at 705 (allowing for the possibility that such an exception to jurisdiction could be extended to "elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody"); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of Donohue's child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). More recently, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, notwithstanding whether this Court is considering this action under its original federal question or diversity jurisdiction, it must either abstain from considering, or lacks subject matter jurisdiction to consider, any request by Plaintiff to issue a decision determining whether he owes child support.

## C. The *Rooker-Feldman* doctrine

**\*4** To the extent that Plaintiff asks this Court to overturn a final order or judgment issued in his concluded child support

2024 WL 757338

proceedings in the New York Family Court, Bronx County, the *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine ... recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments...."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court. *See, e.g.*, *Legister*, 2020 WL 7405672, at *3 ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses any claims that essentially challenge a final decision of the New York Family Court, Bronx County, arising from Plaintiff's concluded child support proceedings in that court, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**D. Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In an abundance of caution, and in light of Plaintiff's *pro se* status, the Court grants him 30 days' leave to file an amended complaint should he be able to provide additional facts in support of a viable claim arising out of his child support proceedings in state court. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action for the reasons laid out in this order.

**CONCLUSION**

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed on immunity grounds, 28 U.S.C. § 1915(e)(2)(B)(iii) and for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), with 30 days' leave to replead.

 **\*5** The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 83 of 129

2024 WL 757338

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
*(In the space above enter the full name(s) of the plaintiff(s).)*

_____ Civ. _____ ( ___ )

-against-

AMENDED COMPLAINT

_____
_____
_____
_____
_____
_____
_____

Jury Trial: ☐ Yes ☐ No
*(check one)*

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I.    Parties in this complaint:**

A.    List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

B.    List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 12/2009*                                                    1

Defendant No. 1    Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

Defendant No. 2    Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

Defendant No. 3    Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

Defendant No. 4    Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

**II.    Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal Questions                ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____
_____
_____

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?
Plaintiff(s) state(s) of citizenship _____
Defendant(s) state(s) of citizenship _____

*Rev. 12/2009*                                                    2

**III.    Statement of Claim:**

State as briefly as possible the **facts** of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____

C.    Facts: _____

What happened to you?
Who did what?
Was anyone else involved?
Who else saw what happened?

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.
_____
_____
_____
_____

*Rev. 12/2009*                                                    3

V.    **Relief:**
State what you want the Court to do for you and the amount of monetary compensation, if any, you are
seeking, and the basis for such compensation. _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

Signature of Plaintiff    _____

Mailing Address    _____

_____

_____

Telephone Number    _____

Fax Number *(if you have one)*    _____

Note:    All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners
must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.

Signature of Plaintiff:    _____

Inmate Number    _____

*Rev. 12/2009*                                        4

**All Citations**

Slip Copy, 2024 WL 757338

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 85 of 129
Fernandez v. Turetsky, Not Reported in F.Supp.3d (2014)
2014 WL 5823116

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

 *1 Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section–Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4,

Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

1   Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at *10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

**Factual History**

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that

2014 WL 5823116

the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid*." (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further obligations and all subsequent child support collection efforts were unconstitutional. [2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia*, lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

[2]      *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

## Discussion

### A. Domestic Relations Exception to Jurisdiction
Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v.*

*Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic

relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at \*2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at \*1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at \*2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the *Rooker–Feldman* doctrine.

[3]    *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not

examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

[4]    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

**B.** *Rooker–Feldman Doctrine*

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 88 of 129
Fernandez v. Turetsky, Not Reported in F.Supp.3d (2014)
2014 WL 5823116

these requirements may be loosely termed procedural; the second and third may be termed substantive.

 *4  *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at *6– 7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at *3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at *7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the

child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

 *5  The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at *1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

### SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 5823116

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                                    4

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 89 of 129

2022 WL 17406092

2022 WL 17406092
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,

v.

Bruce J. WAGNER; Reilly Dylion;
and Rebecca Bauscher, Defendants.

1:22-CV-0833 (DNH/ML)
|
Signed November 4, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt.
105, Schenectady, New York 12307.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 3) filed by Julius Phillips ("Plaintiff") to the Court
for review. For the reasons discussed below, I grant Plaintiff's
*in forma pauperis* application (Dkt. No. 3), and I recommend
that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its
entirety without prejudice and without leave to amend.

## I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his
rights were violated by Defendants Bruce J Wagner, Reilly
Dylion, and Rebecca Bauscher (collectively "Defendants"),
who were all involved in Plaintiff's New York State Family
Court ("Family Court") child support proceeding. (*See
generally* Dkt. No. 1.)

[1]      The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that his constitutional
rights were violated by Defendants when they demanded that
he provide his personal information and proceeded to garnish

his wages based on a child support determination against
Plaintiff. (*Id.*) In addition, Plaintiff alleges that he is involved
in his child's life and thus, should not have to pay child
support. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert
the following causes of action: (1) a claim that his wages
were garnished without due process; (2) a claim that his
rights pursuant to the Fourth, Fifth, Seventh, and Fourteenth
Amendments were violated; (3) conspiracy to commit a crime
and forced labor. (*Id.*) As relief, Plaintiff appears to seek a
new trial in the Family Court child support proceeding. (*Id.*)

Plaintiff also filed an application to proceed *in forma
pauperis*. (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $402, must ordinarily
be paid. 28 U.S.C. § 1914(a). A court is authorized, however,
to permit a litigant to proceed *in forma pauperis* status if a
party "is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in
forma pauperis* application (Dkt. No. 3), the Court finds that
Plaintiff meets this standard. Therefore, Plaintiff's application
to proceed *in forma pauperis* is granted. [3]

[2]      The language of that section is ambiguous because
it suggests an intent to limit availability of *in forma
pauperis* status to prison inmates. *See* 28 U.S.C. §
1915(a)(1) (authorizing the commencement of an
action without prepayment of fees "by a person
who submits an affidavit that includes a statement
of all assets such prisoner possesses"). The courts
have construed that section, however, as making *in
forma pauperis* status available to any litigant who
can meet the governing financial criteria. *Hayes v.
United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006);
*Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536
n.1 (S.D.N.Y. 2002).

[3]      Plaintiff is reminded that, although his application
to proceed *in forma pauperis* has been granted, he
is still required to pay fees that he may incur in this
action, including copying and/or witness fees.

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)
Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 90 of 129
2022 WL 17406092

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*2** Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, 28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved ... before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at \*5 (E.D.N.Y Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. The *Rooker-Feldman* Doctrine

Federal district courts lack authority to review state-court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments....").

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Federal review of such claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district-court review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the district-court proceedings commenced. *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

**\*3** "A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at \*3 (S.D.N.Y. Mar. 25, 2020) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013)). "Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu*, 2020 WL 1467356, at \*3 (citing *Fernandez v. Turtsky*, 12-CV-4092, 2014 WL 5823116, at \*1, 3-4 (E.D.N.Y. Nov. 5, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016); *Leftridge v. Support Enforcement Servs.*, 12-CV-0150, 2013 WL 1947174, at \*2 (D. Conn. May 3, 2013); *Remy v. NYS Dep't of Taxation & Fin.*, 09-CV-4444, 2010 WL 3925184, at \*8 (E.D.N.Y. Aug. 18, 2010), *report and recommendation adopted by*, 2010 WL 3926919 (E.D.N.Y. Sept. 29, 2010), *aff'd*, 507 F. App'x 16 (2d Cir. 2013); *see also Adams v. Vt. Office of Child Support*, 717 F.

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 91 of 129

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

2022 WL 17406092

App'x 33, 34 (2d Cir. 2017) (action seeking "an injunction relieving [the plaintiff] of the obligation to pay child support, preventing the garnishment of her future wages, and requiring the return of the monies already collected from her, as well as an award of damages for injuries caused by the child support obligation" should have been dismissed because of the *Rooker-Feldman* doctrine)).

Plaintiff's claims, while not entirely clear, seem to challenge an order by the Family Court, issued before Plaintiff filed this action, in which the Family Court determined that he owes child support. By asking this Court to issue an order allowing for Plaintiff's Family Court proceeding to be "redone" and "thrown out" (Dkt. No. 1 at 7), Plaintiff appears to challenge the validity of that order and its enforcement by garnishment. Thus, Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine, and I recommend that they be dismissed for lack of subject-matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 291 (the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction.").

### B. The Domestic-Relations Abstention Doctrine

"In *American Airlines, Inc. v. Block*, the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims could be fairly determined in the state courts." *Ganiyu*, 2020 WL 1467356, at *4 (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). For example, the Second Circuit directed that federal district courts should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child...." *Am. Airlines, Inc.*, 905 F.2d at 14.

Plaintiff alleges that his future wages have been garnished apparently due to his child-support debt. His claims therefore involve domestic-relations issues and thus, "unless he shows that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over his claims arising from the Family Court's order and its enforcement." *Ganiyu*, 2020 WL 1467356, at *4 (citing *Am. Airlines*, 905 F.2d at 14; *Simmons v. NYS Dep't of Soc. Servs.*, 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support

payments is the type of domestic relations issue that the Court generally abstains from hearing")).

In New York State, a child-support debtor is entitled to the post-judgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52"). For example, when a local government's support collection unit issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. N.Y. C.P.L.R. § 5241(a)(8), (e). The appropriate agency rules on the objection and "notif[ies] the debtor of its determination within forty-five days" of service of the execution. N.Y. C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (N.Y. App. Div. 3d Dep't 2012) (noting that an applicant for relief should commence an Article 78 proceeding after exhausting his administrative remedies before a support collection unit).

**\*4** The Complaint fails to allege facts plausibly suggesting that there are any obstacles preventing Plaintiff from receiving a full and fair determination regarding the amount of child support he owes or the garnishment of his income. As a result, in the alternative, I recommend that the Court abstain from exercising its federal-question jurisdiction over Plaintiff's claims arising from those events pursuant to the domestic-relations abstention doctrine.

### C. Immunity

In the alternative, I recommend that Plaintiff's claims against Defendants Wagner and Bauscher pursuant to 42 U.S.C. § 1983, be dismissed based on the doctrine of judicial immunity.

### 1. Defendant Wagner

Plaintiff's claims under § 1983 against Defendant Wagner, who acted as the support magistrate judge, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 92 of 129

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

2022 WL 17406092

damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendant Wagner. *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims arising from the efforts of Defendant Wagner, in his capacity as a New York Family Court Support Magistrate, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendant Wagner is therefore immune from suit under the doctrine of judicial immunity.

As a result, in the alternative, I recommend that Plaintiff's claims against Defendant Wagner pursuant to 42 U.S.C. § 1983, be dismissed under the doctrine of judicial immunity and because those claims are frivolous. *See 28 U.S.C. § 1915(e)(2)(b)(i), (iii); Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

**2. Defendant Bauscher**

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

 **\*5**  Plaintiff's allegations against Defendant Bauscher arise out of her court-appointed representation of Plaintiff's child during the Family Court proceedings. As a result, I recommend that Plaintiff's claims against Defendant Bauscher pursuant to 42 U.S.C. § 1983, be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

**D. Failure to State a Claim Upon Which Relief May Be Granted**

Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendant Dylion are inadequately pled because he failed to allege that Defendant Dylion acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

Although it is not clear from the face of the Complaint whether Defendant Dylion was appointed by the court to represent "the defendant" in the Family Court proceeding, or whether "the defendant" in the Family Court proceeding privately retained Defendant Dylion, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. May 24, 2011) (Hurd, J.) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 93 of 129

2022 WL 17406092

Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

As a result, in the alternative, I recommend that Plaintiff's claim against Defendant Dylion be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [4]

[4]  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating

a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

\*6  Here, better pleading could not cure the Court's lack of subject matter jurisdiction described above. As a result, I recommend that Plaintiff's claims be dismissed without prejudice but without leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1), because the Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW__. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[5]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 94 of 129

2022 WL 17406092

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17406092

---

**End of Document**                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Phillips v. Wagner, Not Reported in Fed. Supp. (2022)

2022 WL 17403441

2022 WL 17403441
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Julius PHILLIPS, Plaintiff,

v.

Bruce J. WAGNER, Reilly Dylion,
and Rebecca Bauscher, Defendants.

1:22-CV-833
|
Signed December 2, 2022

**Attorneys and Law Firms**

JULIUS PHILLIPS, Plaintiff, Pro Se, 800 State Street, Apt. 105, Schenectady, NY 12307.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On August 10, 2022, *pro se* plaintiff Julius Phillips ("plaintiff") filed this action alleging that defendants violated his rights in connection with a New York State Family Court child support proceeding. Dkt. No. 1. Although this matter was initially closed due to plaintiff's failure to pay the filing fee, Dkt. No. 2, the Clerk of the Court reopened the case after plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3, 4.

On November 4, 2022, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that the complaint be dismissed without prejudice, but without leave to amend. Dkt. No. 5. As Judge Lovric explained, better pleading could not cure a fundamental jurisdictional defect that arose based on the set of facts alleged; *i.e.*, clear precedent demonstrated that state judicial officers and others acting as arms of the state court are generally immune from suit under § 1983. *Id.* As for plaintiff's claims against a private attorney who appeared before the state court, Judge Lovric correctly noted that private actors generally cannot be sued under § 1983. *Id.*

Plaintiff has filed objections. Dkt. No. 7. Upon *de novo* review, the R&R will be accepted and adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED; and

2. Plaintiff's complaint is DISMISSED without prejudice and without leave to amend for lack of subject matter jurisdiction.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17403441

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works. 1

Phillips v. Wagner, Not Reported in Fed. Rptr. (2023)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 96 of 129

2023 WL 4445323

2023 WL 4445323
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Julius PHILLIPS, Plaintiff-Appellant,

v.

Bruce J. WAGNER, Reilly Dylion,
Rebecca Bauscher, Defendants-Appellees.

23-68
|
April 25, 2023

N.D.N.Y., 22-cv-833, Hurd, J., Lovric, M.J.

**Attorneys and Law Firms**

Julius Phillips, Schenectady, NY, Pro Se.

Robert M. Carney, Office of the Schenectady County District Attorney, Schenectady, NY, for Defendants-Appellees.

Present: Guido Calabresi, Michael H. Park, Steven J. Menashi, Circuit Judges.

**Opinion**

**\*1** This Court has determined sua sponte that the notice of appeal was untimely filed. Upon due consideration, it is hereby ORDERED that the appeal is DISMISSED for lack of jurisdiction. *See* 28 U.S.C. § 2107; *Bowles v. Russell*, 551 U.S. 205, 214-15 (2007).

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 4445323

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 97 of 129

2022 WL 3228272

2022 WL 3228272
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Albert OLIVER, Plaintiff,

v.

Ayesha PUNTER, Meridith Lafler, Support
Magistrate; Harmon Lutzer, Attorney; Steve Bellone;
Suffolk County Executive; SCCSEB, Defendants.

22-CV-3580(GRB)(LGD)
|
Signed August 10, 2022

**Attorneys and Law Firms**

Albert Oliver, Huntington Sta., NY, Pro Se.

## ORDER

GARY R. BROWN, United States District Judge:

 **\*1** On June 16, 2022, *pro se* plaintiff Albert Oliver
("plaintiff") filed a complaint in this Court against
Ayesha Punter ("Punter"), Meridith Lafler ("Lafler"),
Harmon Lutzer ("Lutzer"), Suffolk County Executive
"Steve Bellone" ("Bellone"), and "SCCSEB"[1] (collectively,
"defendants") using the Court's form for civil rights actions
brought pursuant to 42 U.S.C. § 1983. *See* Docket Entry
"DE" 1. Plaintiff also filed an application to proceed *in forma
pauperis* ("IFP") together with the complaint. DE 2.

[1]     The Court understands this to reference the Suffolk
        County Child Support Enforcement Bureau.

Upon review, the Court finds that plaintiff is qualified by his
financial status to commence this action without prepayment
of the filing fee. Accordingly, plaintiff's application to
proceed IFP is granted. However, for the reasons that follow,
the complaint is dismissed pursuant to Federal Rule of Civil
Procedure 12(h)(3) and 28 U.S.C. §§ 1915(e)(2)(B).

## BACKGROUND

**1. Summary of the Complaint**[2]

[2]     Excerpts from the complaint are reproduced here
        exactly as they appear in the original. Errors in
        spelling, punctuation, and grammar have not been
        corrected or noted.

*Pro se* plaintiff's brief submission seeks to challenge an
underlying state court child support proceeding. According to
the complaint, at the Family Court building located in Central
Islip, New York:

> On April 26, 2022 both Support
> Magistrate Meridith Lafler and
> Attorney Harmon Lutzer held a
> support hearing without following the
> rules of Due Process. On May 25,
> 2022, Support Magistrate Meridith
> Lafler disregarded Due Process by not
> following the rules of Due Process.

DE 1 at 5, ¶ III. Although plaintiff left the space on the form
complaint that calls for a description of any injuries suffered
as a result of the challenged conduct blank, he seeks to recover
a monetary damages award in the sum of $240,222.00 as well
as an order terminating any debts or arrears owed and the
return of funds he already paid together with 6% interest. *Id.* at
6, ¶¶ IV-V. Plaintiff also requests that the defendants "[l]eave
me alone from this forthwith." *Id.* at ¶ V.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure
wherein the district court first considers whether plaintiff
qualifies for *in forma pauperis* status, and then considers the
merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick
v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### 1. *In Forma Pauperis*

Upon review of the IFP application, the Court finds that
plaintiff is qualified by his financial status to commence this
action without the prepayment of the filing fee. Therefore, the
application to proceed IFP (DE 2) is granted.

Oliver v. Punter, Not Reported in Fed. Supp. (2022)

2022 WL 3228272

### 2. Sufficiency of the Pleadings

As Judge Bianco summarized,

A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

**\*2** It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them " 'to raise the strongest arguments that [they] suggest [ ].' " *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, ––– U.S. ––––, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at \*1-2 (E.D.N.Y. Dec. 31, 2014).

### DISCUSSION

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id.* The Court analyzes plaintiff's Section 1983 claims below.

### I. Lack of State Action

"[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Although plaintiff names Punter and Lutzer as defendants, he has not alleged that either defendant is a state actor or has otherwise acted under color of state law. *See* DE 1, *in toto.* Accordingly, plaintiff has not plausibly alleged a Section 1983 claim against Punter and Lutzer and these claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### II. Lack of Personal Involvement

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 99 of 129
Oliver v. Punter, Not Reported in Fed. Supp. (2022)

2022 WL 3228272

**\*3** Plaintiff's sparse complaint does not include any factual allegations of conduct or inaction attributable to any of the defendants. Indeed, apart from the caption and "Parties" section of the complaint, Punter, Bellone, and SCCSEB are not again mentioned. *See* DE 1, *in toto*. Moreover, plaintiff has alleged only that Lafler and Lutzer "held a Support Hearing without following the rules of Due Process." *Id.* at 5, ¶ III.C.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Rather, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Here, as is readily apparent, Plaintiff has omitted any factual allegations of conduct or inaction attributable to any defendant and his "bald assertions and conclusions of law" do not suffice. Thus, in the absence of any alleged personal involvement by any defendant, plaintiff has not set forth a plausible Section 1983 claim against them. Thus, plaintiff's Section 1983 claims are not plausible and are thus dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### III. The Domestic Relations Exception

Even if Plaintiff had alleged the personal involvement of each defendant, this Court could not adjudicate his claims challenging an underlying state court child support proceeding. The domestic relations exception to federal jurisdiction " 'divests the federal courts of power to issue divorce, alimony and child custody decrees.' " *Stumpf v. Maywalt*, No. 21-CV-06248(EAW), 2022 WL 2062613, at *4 (W.D.N.Y. June 6, 2022) (quoting *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004)

(citation omitted)). This exception also extends to child support determinations and the enforcement thereof. *See, e.g., Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau*, 07-CV-03755(JFB)(AKT), 2009 WL 580426, at *6-7 (E.D.N.Y. Mar. 5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment"); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (plaintiff's constitutional claims, which were directly related to an underlying child support determination, were barred by the domestic relations exception because "to decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is the role of the Appellate Division ... not the role of this Court."). Thus, the domestic relations exception divests the Court of subject matter jurisdiction to adjudicate plaintiff's Section 1983 claims. Accordingly, they are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

> [3]   It also appears that plaintiff is challenging state court judgments rendered in April and May 2022, well before the complaint was filed in this Court on June 16, 2022. Thus, the *Rooker-Feldman* doctrine would also require this Court to decline plaintiff's invitation to review and reject those state court judgments. *Stumpf*, 2022 WL 2062613, at 4 n. 4 ("The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (internal quotation marks omitted); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

### IV. Leave to Amend

**\*4** The Second Circuit has held that "[d]istrict courts should generally not dismiss a *pro se* complaint without permitting

2022 WL 3228272

at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate. *Rahim v. Secretary, Establishment Div., Gov't of People's Republic of Bangl.*, 481 F. App'x 18, 19 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's complaint without leave to amend where complaint was dismissed for lack of subject matter jurisdiction).

Here, leave to amend would be futile given that the domestic relations exception divests this Court of subject matter jurisdiction. Accordingly, leave to amend the complaint is denied.

## CONCLUSION

Based on the foregoing, plaintiff's application to proceed IFP is granted. The complaint is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Leave to further amend the complaint is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3228272

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738

2017 WL 5201738
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

Civil Action No. 5:17-CV-1065 (GLS/DEP)

|

Signed 10/31/2017

**Attorneys and Law Firms**

MICHAEL JOSEPH ROTONDO, 408 Weatheridge Dr., Camillus, NY 13031, Pro se.

ORDER, REPORT, AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

**\*1** This is a civil rights action brought by *pro se* plaintiff Michael Joseph Rotondo against the State of New York pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that during the course of proceedings in New York State court, he was denied due process.

Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been forwarded to me for review. Based upon my review of those materials, I conclude that plaintiff qualifies for leave to proceed without prepayment of fees, and therefore will grant his IFP application. I further find, however, that plaintiff's claims in this action are precluded by the *Rooker-Feldman* [1] doctrine and the domestic relations exception to this court's jurisdiction.

[1] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

I. BACKGROUND

Plaintiff commenced this action on September 25, 2017. Dkt. No. 1. Named as the sole defendant in the action is the State of New York. *Id.* at 1. Plaintiff claims that throughout the course of proceedings in the New York State Supreme Court Appellate Division, Fourth Judicial Department, he was

denied due process when (1) Associate Justice Edward D. Carni declined to issue an order to show cause applied for by plaintiff to stay a support order entered in Onondaga County Family Court, and (2) the court dismissed his appeal from lower court proceedings and denied a motion by plaintiff for a transfer of venue. *Id.* at 3, 5. *See also* Dkt. No. 1 at 8-11. In his three causes of action plaintiff claims that he was denied due process, as guaranteed under the Fourteenth Amendment to the United States Constitution, by Judges Edward D. Carni, John V. Centra, Patrick H. NeMoyer, Shirley Troutman, Joanne M. Winslow, Henry J. Scudder, Gerald J. Whalen, Nancy E. Smith, Erin M. Peradotto, Stephen K. Lindley, and John M. Curran. [2] *Id.* at 5.

[2]    As was previously indicated, the sole named defendant in this case is the State of New York. In the event that plaintiff intended to name the judges identified in his causes of action as defendants, his claims against them would be precluded. "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

Plaintiff's complaint is accompanied by an application for leave to proceed without prepayment of fees or costs. Dkt. No. 2. That application sets forth the necessary financial information concerning plaintiff's income and expenses to permit the court to determine whether he qualifies for IFP status.

II. DISCUSSION

  A. IFP Application
 **\*2** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [3] In this instance, because I conclude that plaintiff meets the requirements for IFP status,

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 102 of 129

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738

his application for leave to proceed without prepayment of fees is granted. [4]

3      The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4      Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants*

*Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

**\*3** When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 103 of 129

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738

'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. Analysis

Federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte* at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction ... may be raised ... *sua sponte*." (quotation marks and alterations omitted)). "Where jurisdiction is lacking, ... dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, two legal doctrines implicating this court's jurisdiction require dismissal of plaintiff's complaint—the domestic-relations exception and *Rooker-Feldman* doctrine. I will address each separately below.

### a. Domestic-Relations Exception

Because plaintiff's claims, brought under 42 U.S.C. § 1983, are couched in terms of constitutional deprivations, the court would ordinarily possess subject matter jurisdiction over them. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' "[5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

[5]    "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases

based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

**\*4** The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

In this case, it is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court. Dkt. No. 1 at 3, 6. In order to adjudicate plaintiff's claims, this court would be forced to examine the family court and Appellate Division decisions, and the evidence upon which those decisions were rendered, in the domestic relations proceedings. Because the court lacks jurisdiction over plaintiff's claims, I recommend the complaint be dismissed. *See, e.g., Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at \*4-5 (E.D.N.Y. June 8, 2015) (relying on the domestic-relations exception to federal court jurisdiction when dismissing the plaintiff's claims that challenged the state courts' determinations concerning his child support obligations).

### b. Rooker-Feldman

Plaintiff's claims are also precluded by the *Rooker-Feldman* doctrine, which recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738

154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

This preclusion "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

"A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quotation marks omitted).

**\*5** The four elements required for the application of the *Rooker-Feldman* doctrine are clearly satisfied in this case. In his complaint, plaintiff effectively asks this court to assume appellate jurisdiction over matters pending in a New York State family court and the Appellate Division. Dkt. No. 1 at 3, 6. Because plaintiff's claims are precluded on this separate and independent basis, as well, I recommend their dismissal.

### C. Whether to Permit Amendment
Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs

would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, the deficiencies identified in this report are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend.

### III. SUMMARY AND RECOMMENDATION
Because plaintiff's IFP application demonstrates that he qualifies for leave to proceed without prepayment of fees or costs, that application is granted.

Turning to the merits of plaintiff's claims, I conclude that they are precluded by both the domestic relations exception to this court's jurisdiction and the *Rooker-Feldman* doctrine, and that plaintiff would be unable to overcome these deficiencies by better pleading. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed without prepayment of cost and fees (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint in this action be DISMISSED without leave to amend; and it is further

RECOMMENDED that plaintiff's letter requesting the court expedite review of this matter (Dkt. No. 4) be DENIED as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5201738

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

6    If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*6** The clerk of the court is respectfully directed to serve a copy of this report, recommendation, and order on plaintiff in accordance with the local rules of practice for this court.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5201738

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 106 of 129

Rotondo v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 5198194

2017 WL 5198194
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Joseph ROTONDO, Plaintiff,

v.

The State of NEW YORK, Defendant.

5:17-cv-1065 (GLS/DEP)
|
Signed 11/09/2017

**Attorneys and Law Firms**

FOR PLAINTIFF: Michael Joseph Rotondo, 408
Weatheridge Dr. Camillus, NY 13031, pro se.

## **ORDER**

Gary L. Sharpe, U.S. District Judge

 **\*1** The above-captioned matter comes to this court
following an Order, Report, and Recommendation (R&R) by
Magistrate Judge David E. Peebles, duly filed on October
31, 2017. (Dkt. No. 5.) Following fourteen days from the
service thereof, the Clerk has sent the file, including any and
all objections filed by the parties herein.

Plaintiff *pro se* Michael Joseph Rotondo has filed a document
labeled "Objections to the Report-Recommendation," which

consists of a single sentence wherein he summarily
"respectfully reasserts the merit of his allegations." (Dkt. No.
6.) Because Rotondo's objections are general and conclusory,
the court will review the R&R for clear error only. *See*
*Almonte v. N.Y.S. Div. of Parole*, No. Civ. 904CV484, 2006
WL 149049, at \*5-\*6 (N.D.N.Y. Jan. 18, 2006). After careful
consideration, the court finds no clear error and adopts the
R&R in its entirety.

Accordingly, it is hereby

**ORDERED** that the Order, Report, and Recommendation
(Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Rotondo's complaint (Dkt. No. 1) is
**DISMISSED** without leave to amend; and it is further

**ORDERED** that Rotondo's letter motion seeking to
expedite review of this matter (Dkt. No. 4) is **DENIED** as
moot; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the
parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5198194

---

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 107 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

2017 WL 6021838
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-00510 (BKS/TWD)
|
Signed 10/26/2017
|
Filed 10/27/2017

**Attorneys and Law Firms**

KIPLIND L. CRUZ, 5825 Townline Road, Cincinnatus, NY 13040, pro se.

## ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S. District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/Plaintiff (hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. Nos. 8, 9 and 11.) The Court also has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos. 1, 1-1, and 1-2.) For the reasons explained herein, the Court recommends that (1) none of the state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to have been properly removed to, or to be subject to removal to, federal district court [1]; (2) his petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion for a temporary restraining order and preliminary injunction be denied as moot or, in the alternative, on the merits.

[1]    Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear to be an option. (Dkt. No. 1 at 40.)

## I. BACKGROUND

### A. Plaintiff's Original Filings

On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and 1513(b). [2] The various state court proceedings identified by Plaintiff, and out of which his habeas corpus petition arises, involve unpaid child support, child custody, and visitation disputes between Plaintiff and his estranged wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1; 1-1 at 1-3. [3] )

[2]    Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order. (Dkt. No. 6.)

[3]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff also filed a civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. Nos. 1 and 1-2.) Plaintiff named nearly seventy defendants whom he presumably believes to have been involved in matters related, either directly or indirectly, to the subject matter of the state court proceedings, reports made to the New York State Central Register of Child Abuse and Maltreatment ("SCR"), or his former employment. (*See generally* Dkt. No. 1-2.) The complaint contains factual allegations similar to those in Plaintiff's removal/habeas corpus papers. [4]

[4]    Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse. (Dkt. No. 1-2 at 15.) Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

**\*2** In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and

2017 WL 6021838

Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq.* [5] (Dkt. No. 1-2 at 16.) Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief. *Id.* at 29-31.

[5]      The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

**B. Stay Order**

In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e). The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children. [6] (Dkt. No. 6 at 6.) The Order advised Plaintiff if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

[6]      The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children. (Dkt. No. 6 at 6.) The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts. (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.) Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was premature and unauthorized.

**C. Plaintiff's Failure to Comply with the Court's Stay Order**

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles, [7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on their behalf, in any other proceeding.

[7]      Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

**II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT**

**\*3** 28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage*

2017 WL 6021838

*Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

## III. NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

**\*4** On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

> 5 Day Notice: Petition for Writ of Habeas Corpus in United States District Court pursuant of 18 USC 1512(b)(3) & 18 U.S.C. § 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from State of New York, County of Cortland, Chenango, Onondaga, New York State[;] Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443[;] State of New York, County Court Case # 9788 Docket#v-01361/1362 16/16A file # 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362 16/17F file #9788 docket # v-1361/1362 16/17F and any other unlawfully ordered hearings of cases Federal Removal pursuant of 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For witness and victim Retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of Justice, Unlawful Activities, slander, perjury, false Statements, violations and denial of movants Constitutional I, V, VI & XIV Amendment Rights's, privileges, and immunities, Civil Human Universal, International & Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon. William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social Services, CPS/DSS,

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 110 of 129

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

2017 WL 6021838

Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S. Francis Williams, attorney for Nicole Cruz. (Dkt. No. 1 at 1.) Plaintiff has identified his grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC § 242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§ 1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil human, universal, international, and fundamental rights. *Id.* at 4.

### A. Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016. (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.) Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97. *Id.* In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children. *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept. (Dkt. No. 1 at 11.)

 **\*5** Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful. (Dkt. No. 1 at 32.) Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County. *Id.* at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers. *Id.* at 34. On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County

Family Court, planning to submit documentary evidence that would result in dismissal of the case. *Id.* at 37. Instead, the Judge denied Plaintiff's right to be heard and appointed a guardian ad litem for the minor children. (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York. *Id.* at 38. The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice. *Id.* at 39; Dkt. No. 1-1 at 24. In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years. (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR. (Dkt. Nos. 1 at 39; 1-1 at 27-28.) From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings. *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court. *Id.* at 41. On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions. *Id.* Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family Court since he served removal papers. *Id.* at 43. According to Plaintiff, they have ignored his removal notice. *Id.*

### B. Removal

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No. 1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> **(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 111 of 129
**Cruz v. New York, Not Reported in Fed. Supp. (2017)**
2017 WL 6021838

the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**\*6** 28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant ... shall file in the district court ... a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

### 1. No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F.Supp. 939, 940 (E.D. La. 1969) (there must exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove). Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017. (Dkt. No. 1 at 40.) Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017. (Dkt. No. 1-1 at 36-37.) Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes. *See* 28 U.S.C. §§ 1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

### 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443.[8] In *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), the Supreme Court concluded that the phrase " 'any law providing for ... equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

[8]     Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings. *See* 28 U.S.C. § 1446(b). However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review. *See Flood v. CSX Transp., Inc.*, No. 11-CV-162S (WMS), 2012 WL 464189, at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

**\*7** Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority. (*See generally* Dkt No. 1.) Furthermore, Plaintiff is identified in SCR records as "White." (Dkt. No. 8-10 at 7.) Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under § 1443(2). In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in § 1443(2) as "primarily aimed" at "acts of officers or

2017 WL 6021838

quasi-officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act." *Id.* The Court determined that "[a] private person claiming the benefit of § 1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him." *Id.* Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of § 1443(2) is available "to state officers, and those acting with or for them including local and municipal officers." [9] *White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015 WL 6551782, at *3 (D. Conn. Oct. 29, 2015) [10] (citing *White*, 627 F.2d at 585). Plaintiff has not alleged facts plausibly showing that he is a state officer or that he was or is acting with or for state actors in connection with the proceedings on which he seeks removal.

[9]   In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined that the statutory language would also allow removal by federal officials.

[10]   Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

### 3. The Domestic Relations Exception Would Divest the Court of Subject Matter Jurisdiction in Any Event

In *Ex Parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890), the Supreme Court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the State and not to the laws of the United States." A century later, in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the Supreme Court reaffirmed what had become known as "the domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

Claims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction. *See, e.g., Sobel v. Prudenti*, 25 F.Supp.3d 340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims); *Neustein v. Orbach*, 732 F.Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation ..."). Courts have relied on the domestic relations exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443 for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e). *See, e.g., Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal on initial review on removal dealing with dispute over child support and custody in state court domestic relations proceeding). It is clear that even if there were a pending state court proceeding subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without subject matter over claims related to custody, child support, and visitation under the domestic relations exception. [11]

[11]   The papers do not provide the Court with sufficient information to determine on initial review whether the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971)), or *Rooker Feldman* doctrines apply to Plaintiff's filings. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (federal courts may not sit in direct review of state court judgments unless directly authorized by Congress).

**\*8** Based upon the foregoing, the Court recommends that none of the state court proceedings Plaintiff has described in his removal notice or with respect to which he has submitted documentation be deemed to have been properly removed to, or to be subject to removal to federal district court.

### C. Habeas Corpus Petition

Plaintiff has filed his writ for a petition for habeas corpus under 18 U.S.C. §§ 242, 1512 (b)(3), and 1513(b). All three are criminal statutes. Section 242 is for criminal deprivation of rights under color of law. Section 1512(b)(3) is for hindering, delaying, or preventing communication to a law enforcement officer or federal judge relating to the possible commission of a federal offense or violation of conditions

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

of probation, supervised release, parole, or release pending judicial proceedings. Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer." 18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action. *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases). Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes. Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody. *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 Fed.Appx. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

## IV. PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with his notice of removal and habeas corpus petition. (Dkt. No. 1-2.) As noted above, the Court's initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

### A. Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the caption and those identified as "required parties in joinder." (Dkt. No. 1-2 at 1-5.) Party

Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York & the following additional defendants in joinder: Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; Joseph McBride, District Attorney; Steven M. Dunshee, Chenango County First Assistant District Attorney; Chenango County Public Defender; Sabrina Dier Public Defenders Office; James Taylor, Esq.; James H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren owner of Lakeside Rentals— landlord; Ben Bergman part owner of Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP; Hon. William Ames; Kristen Monroe, Commissioner Cortland County DDS; David K. Knickerbocker, Director of Administrative Services, Cortland County DDS; Cortland County CPS; Melissa Archer, CPS; Colin [CPS], Supervisor Cortland County Child Advocacy Center; Jane Doe, Cortland County; 2 Cortland County Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD— Board of Education; Thomas Durkot, Elementary Principal; Cathy Aitchison LCSW, Cincinnatus CSD; Carnitra White, County Director of Human Resources at Anne Arundel CSCU; City of Annapolis, State of Maryland; Nicole Cruz, Broward County, Davie, State of Florida.

**\*9** (Dkt. No. 1-2 at 1-2.) The following Defendants have been joined by Plaintiff as necessary defendants:

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 114 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Brian J. Doliver, Second Ward
Alderman; Detective John Fern;
Sheila J. Poole, Acting Commissioner
NYS Central Register OFCS;
Sarah Simon, Regional Director
of Child Welfare Services; Betty
Osborne, Commissioner, Cathy
Lavoli, Supervisor, Beth Beers,
and CPS Patricia Luca, Chenango
County DSS; Sarah Fitzpatrick, Esq.,
Chenango County DSS; Irene A.
Flores, Esq.; DCMOBOCES Board
of Education Superintendent Doreen
Rowe, Deputy Superintendent Kim
Corcoran, District School Lunch
Director, Connie Bambino, Asst.
District School Lunch Director,
Pam Rowe, School Lunch Cook;
City of Norwich Fire Department,
Terry Kuhn; Johanna Kuhn, City
of Norwich Police Department;
Chief Joseph Angelino; Sergeant
John Doe; Norwich Central School
District Board of Education President
Joseph McBride, Vice-President Tom
Sutton, and member Howie Sullivan;
Gerrard O'Sullivan Superintendent;
Karrie Stainbauer Director of
Special Education; Nicole A. Cruz,
Special Education Teacher; Christine
Bienick, NYSUT President, Unadilla
Valley Teacher Assoc.; Dr. Alfred
Barnes; Unadilla Valley Central
School District Board of Education
President Kristen Romavicz, Vice-
President Mark Davis, Vicky Gregory,
Kim Murray, and Robert Mackey;
Superintendent Mike Brown; Business
Official Frank Johnson; Building
Principal Chris Harper; Elementary
Principal Sherri Houck; Elementary
School Counselor; Chris Wilkinson,
Labor Negotiations; and Mike Lyn,
Regional President.

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include
Cortland County Sheriff's Department; Hon. Julie Campbell,
Cortland County Family Court; three Jane Doe Cortland
County Family Court Clerks; and four John Doe officers. *Id.*
at 6.

### B. Factual Allegations in the Complaint

The factual allegations in Plaintiff's complaint and his claims
for relief arise in substantial part out of the child support,
custody, and visitation disputes between the Plaintiff and
Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also
made to both Nicole Cruz and the Plaintiff having been
made the subject of reports of child abuse or maltreatment
received by the SCR. *Id.* at 12; Dkt. No. 1-1 at 27-28. In
addition, there are references in the complaint to the transfer
and subsequent termination of Plaintiff's employment. (Dkt.
No. 1-2 at 13-14.)

Plaintiff has made specific factual allegations against a mere
fraction of the Defendants named by him in his original
complaint. They include the following.

### 1. Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged
wife Nicole were in the process of starting a business in the
City of Norwich and were approved for loans from the City
and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff
claims that Terry Kuhn, acting out of power and jealousy,
along with his wife Johanna Kuhn, forced Nicole to force
Plaintiff from his home and to default on the loans and a
business Plaintiff and Nicole were buying. *Id.* at 11. A short
time later, Terry Kuhn, through the abuse of his power as a
local firefighter, conspired with his friends at the Chenango
County Sheriff's office and buddy Frank Revoir and conjured
up baseless false statements about Plaintiff. *Id.* at 11-12.
Terry Kuhn also allegedly has the Chenango County Sheriff's
Department and the court in his pocket. *Id.* at 19.

**\*10** The alleged conspiracy caused a temporary order for
protection to be issued against Plaintiff, who received no due
process, not even a hearing. *Id.* at 12. Plaintiff was required to
pick his children up at the police department for three years
while one of the Kuhns was president of the Union, and he
was harassed and discriminated against the entire time. *Id.*
From December 2012 to the present, Nicole Cruz had three

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 115 of 129
Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

indicated reports of child abuse and two indicated reports for child maltreatment. *Id.* Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id.*

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id.* at 13. On August of 2016, Plaintiff learned that Nicole had moved to North Carolina. (Dkt. No. 1-2 at 13.) Plaintiff has also alleged:

18. Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

19. The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse ..." *Id.* at 20.

### 2. Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired with Terry Kuhn to conjure up baseless false statements against Plaintiff. (Dkt. No. 1-2 at 11.) Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his pocket. *Id.* at 19.

### 3. Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a "surprise" initial appearance "that apparently overruled the complaints (sic) due process mandated by the congressional act of CAPTA Act of 2010 and the Adam Walsh Act 2006." (Dkt. No. 1-2 at 13.) Plaintiff claims that he was deprived of the opportunity to be heard and call witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour, then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff. *Id.*

**\*11** Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff member at the Public Defender's Office to impersonate a child care provider at a non-profit childcare center paid for by Plaintiff without financial assistance from his estranged wife. *Id.* at 19. In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is in contempt and in violation of an act of Congress as well as international law and treaties. *Id.* at 20. Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause, Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and denied Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely premeditated action with malice. (Dkt. No. 1-2 at 21.)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 116 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

#### 4. Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff reported for a hearing before Judge Ames on December 21, 2016. (Dkt. No. 1 at 37.) The sole allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family Court locked and loaded with enough documentation to tear the Court house down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very hearing, my 1st amendment right as a US Citizen, not to mention Son of the Revolution. The Complainant explained clearly and sternly that he had the documentation to have the petition dismissed on the ground of documentary defense, not to mention the defendant N. Cruz petition also lacks validity nor executes any claim. Hon. W. Ames denied the complainants right to be heard as well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

#### 5. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings involving child support and visitation issues. (*See* Dkt. No. 1 at 38.) In his civil rights complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole Cruz. (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016. (Dkt. No. 1 at 40.) In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare center" paid for by Plaintiff. (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in connection with the child support and visitation proceedings. (Dkt. Nos. 1 at 6; 1-2 at 1.) In his civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq.*, transferred to 34 U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he deserved. (Dkt. No. 1-2 at 21-22.)

#### 6. Sheila Poole, Acting Commissioner of OCFS

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No. 1-2 at 4), released three indicated reports of child abuse and two indicated reports of child maltreatment, including sealed reports, from December 2012 to the present to Plaintiff. *Id.* at 12.

#### 7. Chenango County Department of Social Services

**\*12** It is not clear from Plaintiff's complaint that he named the Chenango County Department of Social Services ("Chenango County DSS") as a Defendant. He has, however, named Chenango County. (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection, safety, services, and privileges he deserved by failing to prosecute defendants. (Dkt. No. 1-2 at 21-22.)

8. Cortland County Department of Social Services, Commissioner Kristen Monroe, and Director of Administrative Services David Knickerbocker

It is also not clear from Plaintiff's complaint that he named the Cortland County Department of Social Services ("Cortland County DSS") as a Defendant. He did, however, name Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and employees in CPS. (Dkt. No. 1-2 at 2, 5.) Plaintiff alleges that Commissioner Monroe and Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole $1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or means to take one. (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other privileges, rights, services and protections under the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.,* formerly cited as 42 U.S.C. §§ 16911, *et seq.,* thereby denying Plaintiff the protection, safety, services and privileges he deserved by failing to prosecute defendants. *Id.* at 21-22.

9. DCMO BOCES and Unadilla Valley Central School District

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley Central School District ("Unadilla"). Plaintiff's employment at Unadilla was terminated effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt. No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill two full time management positions at Unadilla while he had custody of his children. (Dkt. No. 1 at 33.) Plaintiff also

claims that following his termination, Superintendent Robert Mackey, named as a Defendant, and unidentified members of the administration at Unadilla, began to make false allegations against Plaintiff. *Id.*

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction, Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section 75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he was subjected to involuntary servitude and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran, and Rowe. *Id.*

10. Conspiracy

**\*13**  Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy for the one objective of covering up the sexual abuse by an elementary school special education teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has identified the membership in the conspiracy as follows:

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee.

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 118 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Defendants continually denied the complainant(s) (sic) rights.

*Id.* Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[]'s 1st, 2nd, 4th, 5th, 6th 8th, 9th, 10th, 13th (sec. 1) and 14th (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

### C. Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse.[12] (Dkt. No. 1-2 at 16.) Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

[12]    There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth./Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258. *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen. *Id.* at 30. Plaintiff also seeks

damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id.*

**\*14** In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id.*

## V. MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend. On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al.*" (Dkt. No. 9 at 1.) Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id.* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id.* at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint,

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 119 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws. [13] *Id.* at 3.

[13]     In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

## VI. MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument and ORDER to Show Cause, before Honorable Daniel J. Stewart ... for Preliminary ORDER and Judgement RULE 72 Pretrial Order." [14] (Dkt. No. 8.) Included among Plaintiff's submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff demands that Respondents vacate and dismiss immediately any New York State matters for lack of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S. Code § 242 Deprivation of rights under color of law, and 18 U.S. Code § 241 Conspiracy against rights (RUL 72 Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration, Proclamation and Reclamation to His natural rights as Son of the revolution & The Original Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6); (7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) "NOTICE: ex parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017,

"Actio Contreto Actio Vi Bono Rum Raptorum Actio Ex Contractu Actio Mixta Actio Personum Actio Ex Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 8-10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) "Memorandum of the Law and Laws of a Writ of Quo Warrento (Rule 72 Pretrial order)" (Dkt. No. 8-12); (13) "Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint pursuant to US federal Codes: 18 U.S.Code § 1201 Kidnaping, 18 U.S. Code 242 Deprivation of rights under color of law, 18 U.S. Code § 241 Conspiracy against rights 28 U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No. 14.)

[14]     The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

**\*15** Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material, repetitive accusations, conclusory assertions, and hard to follow open ended allegations against frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific Defendants, and an ill-defined request for the injunctive relief being sought. As best the Court can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken belief that the Court's earlier Order staying this action stayed all state court proceedings and in essence enjoined any actions by the multitude of Defendants named by him with regard to matters about which Plaintiff complains herein. (*See* Dkt. No. 9-1 at 2.) Plaintiff, failing to understand that his notice of removal, petition for a writ of habeas corpus, and civil rights complaint have yet to be accepted for filing by the District Court, also appears to justify his request for injunctive relief on the absence of any response to those papers by Defendants, for whom summonses will not be issued unless and until those papers are accepted by the District Court and Defendants are directed by the District Court to respond in some fashion. (*See* Dkt. No. 9 at 2.)

Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his notice of removal habeas petition, and civil complaint. (Dkt. 8-3 at 2.) Plaintiff has also raised the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory injunction directing

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 120 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

a response. (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.) Plaintiff claims that the day after he commenced this action/proceeding, his children were unlawfully seized and taken to Florida by unidentified "respondents" in violation of federal kidnaping laws, and he may be seeking injunctive relief with regard to the allegedly illegal seizure. (Dkt. 8-11 at 2.) Plaintiff also claims he is being harassed, defamed, and attacked; he has had false allegations placed against him on the SCR; and the State has black balled him from future state employment. (Dkt. No. 8-11 at 3-4.) Plaintiff may be seeking injunctive relief with regard to those claims as well. In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and health care benefits; placing him back on the payroll with benefits; and returning various property taken from him. *Id.* at 5-7.

**VII. LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION**

**A. Elements of a 42 U.S.C. §§ 1983 Claim**

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.), *cert. denied,* —— U.S. ——, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." [15] *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law. *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

15      A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee,* No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

**\*16** In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. [16] *Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

16      Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986. (Dkt. No. 1-2 at 1.) However, under § 1985(3), "the conspiracy must [ ] be motivated

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**
Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 121 of 129
2017 WL 6021838

by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir. 2d Cir. 2000), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). As noted above, Plaintiff has been identified as White, and there are no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus. When a claim under 42 U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

The elements of a conspiracy claim under § 1983 are: "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

**B. Personal Involvement Requirement of § 1983**

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant ... § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at *5 (E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at *5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at *2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against Defendants Onondaga County,

Chenango County District Attorney Joseph McBride, Steven M. Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren, Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot, Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District School Board of Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland County Family Court Clerks, and four John Doe Officers. [17]

[17] The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers. (Dkt. No. 8-7 at 8.) The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint. Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

**\*17** Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly showing that the Defendants listed above had violated his constitutional rights under § 1983, for reasons discussed below, the Court finds that allowing amendment in this case would be futile.

**C. Eleventh Amendment Immunity**

Plaintiff has sued New York State. (Dkt. No. 1-2 at 1.) It is well settled that in the absence of consent by the state or abrogation of immunity by Congress under the Fourteenth Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 122 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id.*

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D. Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court.[18] (Dkt. No. 1-2 at 1, 4, 6.) All are sued in connection with the support, visitation, and custody

proceedings involving Plaintiff and his estranged wife Nicole. (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

18    While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff. (Dkt. No. 1 at 41-42.)

**\*18** It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities. *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Immunity from suit is overcome in only two narrow circumstances. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." *Id.* at 13, 112 S.Ct. 286 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support, visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint against them with prejudice on judicial immunity grounds.

### E. Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 123 of 129
Cruz v. New York, Not Reported in Fed. Supp. (2017)
2017 WL 6021838

3 School Districts, BOCES,
my Superiors at work, teachers,
administrators, DA, ADA, DDS,
Chenango County Sheriff's Office,
City of Norwich PD[,] City of Norwich
FD. City of Norwich, Chenango
County Family Courts, Chenango
Count (sic) Child Support DDS,
Chenango County Child Protective
Services, Cortland County Child
Protective Services, Onondaga County
Regional offices for Child Welfare,
the defendant N. Cruz Attorney,
The OFCA Albany, NY, the Law
Guardian Ad Litem, my own Self
hired attorneys, with constant ex parte
all attorney's communication with the
judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the sexual abuse, apparently of Plaintiff's children, by an elementary school special education teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id.* at 23-24. Plaintiff's complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA

Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

**F. Chenango and Cortland Counties**

**\*19** Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and recommend dismissal of the complaint with prejudice against both the Departments of Social Services and Sheriff's Departments. *See Mulvihill v. New York*, 956 F.Supp.2d 425, 427 (W.D.N.Y. 2013).

1. Claims Against the Departments of Social Services

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§ 20911, *et seq.*, formerly cited at 42 U.S.C. §§ 16911, *et seq.* (Dkt. No. 1-2 at 21-22.) CAPTA does not create a private right of action for sexual and physical abuse, neglect, and maltreatment while in foster care. *See Alger v. County of Albany, New York*, 489 F.Supp.2d 155, 159 (N.D.N.Y. 2006) (collecting cases). Moreover, were it if did that would be a claim that should not be addressed in this action in which the interests of Plaintiff's minor children are not represented by counsel. *See, e.g., Ingrao v. County of Albany, NY,* No.1:01-CV-730 (TJM), 2006 WL 2827856 (N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a criminal statute that provides for the manner in which child victims and their right to privacy is protected in connection with the judicial process in criminal matters involving abuse, including sexual abuse. If by chance a person were found to have a private right of action under the provision, it would be Plaintiff's minor children, whose interests are not before the Court in this litigation. SORNA provides for the registration of convicted sex offenders and appears to have no relevance whatsoever to Plaintiff's lawsuit.

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 124 of 129

**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

2017 WL 6021838

### 2. Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff. (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983. *See Pangburn,* 200 F.3d at 72. Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

### G. Nicole Cruz and Terry and Johanna Kuhn

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends. The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors. Terry Kuhn is a member of the City of Norwich Fire Department. (Dkt. No. 1-2 at 14-16.) However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state actor. [19] *Id.* at 11-12.

[19]     Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy. (Dkt. No. 1-2 at 11-2.) That is the sole mention of Revoir in the complaint. He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983. *See Dwares,* 985 F.2d at 100. Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

**\*20** Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying. *Id.* at 11. Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support. *Id.* at 13. According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department. ("NYSED"). *Id.* at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims. *See Cornejo,* 592 F.3d at 127. Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors. *See Dwares,* 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983. The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

### H. Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole. (Dkt. Nos. 1 at 38; 1-2 at 15.) Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time. (Dkt. No. 1 at 40.) The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children. (Dkt. No. 1-2 at 19.) Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law. *See Fine v. City of N.Y.,* 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor). Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their

Cruz v. New York, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 125 of 129

2017 WL 6021838

position. *Harrison v. New York,* 95 F.Supp.3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases). Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position. *Neustein v. Orbach,* 732 F.Supp. 333, 346 (E.D.N.Y. 1990). Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors. *See Dwares,* 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

### I. Kristen Monroe and David Knickerbocker

**\*21** Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house. (Dkt. No. 1-2 at 2, 19.) Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house. Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Cornejo,* 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

### J. Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States by doing so. *See Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice. [20]

[20]    As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

### K. DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia,* that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial. (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.) Plaintiff also claims that he was harassed, bullied, and forced into involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla. (Dkt. No. 8-7 at 8.) According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights. (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Serv., P.C.,* 249 Fed.Appx. 851, 852 (2d Cir. 2007). Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA. *See Sales v. Clark,* No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at \*5 (S.D.N.Y. Feb. 3. 2017). Plaintiff concedes he is covered under the Taylor Law. (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 126 of 129
**Cruz v. New York, Not Reported in Fed. Supp. (2017)**

2017 WL 6021838

is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

**\*22**  Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question. [21]  Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

[21]     A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute. *Cherry v. New York City Dept. of Corr.,* 698 Fed.Appx. 27, 2017 WL 4457140 (Mem), at \*1 (2d Cir. Oct. 5, 2017.)

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000. "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L. Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment

claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt,* 504 U.S. at 703, 112 S.Ct. 2206. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the domestic relations exception. [22]

[22]     The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

### M. Plaintiff's Motion to Amend

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed. Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children. (Dkt. No. 9 at 2.) As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios,* 2008 WL 150209, at \*2. Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

**\*23**  Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping. *See Giano v. Martino,* 673 F.Supp. 92, 95 (E.D.N.Y.), *aff'd,* 853 F.2d 1429 (2d Cir. 1987) (Table). Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction. [23]

[23]     The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

### N. Motion for a TRO and a Preliminary Injunction

Case 5:24-cv-00222-BKS-TWD    Document 4    Filed 04/04/24    Page 127 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6021838

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2)(B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

**RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [24] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[24]    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6021838

---

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00222-BKS-TWD   Document 4   Filed 04/04/24   Page 128 of 129

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6001833

2017 WL 6001833
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kiplind L. CRUZ, Plaintiff,

v.

The State of NEW YORK, et al., Defendants.

5:17-CV-0510 (BKS/TWD)
|
Signed 12/04/2017

**Attorneys and Law Firms**

Kiplind L. Cruz, Cincinnatus, NY, Plaintiff, pro se

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**\*1** On May 9, 2017, pro se Plaintiff Kiplind L. Cruz initiated this action by filing a document described as a "petition for writ of habeas corpus" and "defendants federal removal from State of New York, County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court" to this Court (Dkt. No. 1), with an attached "Complaint" under 42 U.S.C. §§ 1983, 1985, and 1986 (Dkt. No. 1-2). Plaintiff later filed a motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) and a motion to amend (Dkt. No. 9). This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks who, on October 27, 2017, issued an Order and Report-Recommendation recommending that: 1) any state court proceedings arguably covered by Plaintiff's notice of removal be remanded to state court, and the Court find that no state court proceedings have been properly removed; 2) Plaintiff's petition for writ of habeas corpus be dismissed with prejudice; 3) Plaintiff's motion to amend be denied; 4) Plaintiff's complaint be dismissed on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be with prejudice; 5) Plaintiff's motion for a temporary restraining order and a preliminary injunction be denied as moot, or in the alternative, on the merits; and 6) the Court order that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children. Dkt. No. 15. Magistrate Judge Dancks advised Plaintiff that, under 28 U.S.C. § 636(b)(1),

he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. *Id.* at 49. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts it in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 15) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's petition for writ of habeas corpus (Dkt. No. 1) is **DISMISSED WITH PREJUDICE;** and it is further

**ORDERED** that no state court proceedings have been properly removed to this Court; and it is further

**ORDERED** that Plaintiff's motion to amend (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1-2) is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted, and that, with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal is **WITH PREJUDICE**; and it is further

**\*2** **ORDERED** that Plaintiff is granted leave to file an amended complaint with respect to the sex discrimination claim which is the subject of his Human Rights Division complaint, within thirty (30) days from the date of this Order; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within the thirty (30) days, that this action be closed without further Order of the Court; and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order and a preliminary injunction (Dkt. No. 8) is **DENIED AS MOOT**; and it is further

Cruz v. New York, Not Reported in Fed. Supp. (2017)

2017 WL 6001833

**ORDERED** that the determinations in this matter have no effect on the legal rights of Plaintiff's minor children, and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6001833

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.